J. BROWN AND ADAM KING, Adm'rs of PETER BROWN, *vs.* JOHN JONES, Adm'r of P. EARTHER.—*June*, 1839.

The profert of letters of administration places them in the hands of the court, of whom oyer is craved, and not of the party; and being in possession, the court must be assured, by an inspection of the letters, of the right of the party to sue, and of the jurisdiction of the court granting them.

*It seems* that a plaintiff, in whose favor a judgment has been rendered on demurrer to the declaration, may be suffered to join in the demurrer a term after the judgment is 'rendered, and that the court may allow an amendment of the record for that purpose.

In suing upon a contract for the payment of money in a foreign currency, the value of it in *Maryland* currency should be averred in the declaration, and the omission to make such an averment is a good objection on general demurrer.

A special demurrer will perform the office of a general demurrer.

APPEAL from *Frederick* County Court.

This was an action of *debt*, commenced by the appellee on the 3rd February 1836. The writ was in the *detinet*, and claimed a debt of £400 current money.

The plaintiff declared as follows:

*Frederick County*, to wit:—*Jacob Brown* and *Adam King* late of *Frederick* county, yeomen, administrators of all and singular the goods and chattels, rights and credits, which were of *Peter Brown* at the time of his death, who died intestate as it is said, were summoned to answer unto *John Jones*, administrator of all and singular the goods and chattels, rights and credits which were of *Peter Earther* at the time of his death, in a plea that they render unto him the sum of four hundred pounds current and lawful money of *Pennsylvania*, which from him they unjustly detain, and so forth; and thereupon the said *John*, administrator as aforesaid, by *Francis Brengle* his attorney saith, that whereas the said *Peter Brown*, on the first day of April in the year 1820, to wit, at *Frederick* county aforesaid, made his certain writing obligatory, bearing date the day and year aforesaid, and thereby then and there acknowledged himself to be held and bound unto the said *Peter Earther* in the sum of *one hundred pounds current and lawful money of Pennsylvania*, to be paid to the said *Peter Earther*, or to his certain attorney, executors, administrators or assigns, to which payment well and truly to be made and done, he bound himself, his heirs, executors and administrators.

*2nd Count.* Also, that whereas the said *Peter Brown* on the first day of April in the year 1820, to wit, at *Frederick* county aforesaid, made his certain other writing obligatory bearing date the day and year last aforesaid, and thereby then and there acknowledged himself to be held and firmly bound unto the said *Peter Earther*, in the sum of *one hundred pounds current and lawful money of Pennsylvania*, to be paid to the said *Peter Earther*, or to his certain attorney, executors, administrators or assigns, to which payment well and truly to be made and done, he bound himself, his heirs, executors and administrators.

*3rd Count.* Also, that whereas the said *Peter Brown* on the

first day of April in the year 1820, to wit, at *Frederick* county aforesaid, made his certain other writing obligatory, bearing date the day and year last aforesaid, and thereby, then and there acknowledged himself to be held and firmly bound unto the said *Peter Earther*, in the sum of *one hundred pounds current and lawful money of Pennsylvania*, to be paid to the said *Peter Earther*, to which payment well and truly to be made and done, he bound himself, his heirs, executors and administrators.

*4th Count.*  And also, that whereas the said *Peter Brown*, on the first day of April in the year 1820, to wit, at *Frederick* county aforesaid, made his certain other writing obligatory, bearing date the day and year last aforesaid, and thereby, then and there acknowledged himself to be held and firmly bound unto the said *Peter Earther*, in the sum of *one hundred pounds current and lawful money of Pennsylvania*, to be paid to the said *Peter Earther* or to his certain attorney, executors, administrators or assigns, to which payment well and truly to be made and done, he bound himself, his heirs, executors and administrators.  Nevertheless the said *Peter Brown* in his life time, and the said *Jacob Brown* and *Adam King*, administrators as aforesaid, since the death of the said *Peter Brown*, have not, nor hath either of them, yet paid the aforesaid several sums of money, or either of them, or any part thereof, to the said *Peter Earther* in his life-time, or to the said *John Jones*, administrator as aforesaid, since the death of the said *Peter Earther*, but the same or any part thereof, to the said *Peter Earther*, in his life-time, or to the said *John Jones*, administrator as aforesaid, since the death of the said *Peter Earther*, to render or pay the said *Peter Brown* in his life-time, and the said *Jacob Brown* and *Adam King*, administrators as aforesaid, since the death of the said *Peter Brown*, have, and each of them hath, hitherto altogether refused, and the said *Jacob Brown* and *Adam King*, administrators as aforesaid, still do refuse, wherefore the said *John Jones* administrator as aforesaid saith, he is injured, and hath sustained damage to the value of two thousand dollars current money, and therefore

he brings suit and so forth; and the said *John Jones*, brings here into court the writings obligatory aforesaid, sealed with the seals of the said *Peter Brown*, which testify the debt aforesaid in form aforesaid, and so forth, and he also brings here into court letters of administration on the personal estate of said *Peter Earther*, unto him granted, whereby it sufficiently appears unto the court here, that he hath execution thereof, and so forth.

The bonds declared upon, and of which profert was made, consisted of four, dated April 1st 1820, each binding the obligor *Peter Brown*, to pay to the intestate of the appellee, the sum of "*one hundred pounds in current and lawful money of Pennsylvania.*"

To this declaration the defendant filed a special demurrer and for causes assigned.

1st. That there is no sufficient profert of the letters of administration granted to the said *John Jones*, administrator of *Peter Earther* deceased; and also the said declaration is otherwise uncertain, unlawful, and insufficient. Upon this demurrer the county court rendered judgment for the plaintiff for £400 debt, as also damages and costs.

At the same term the plaintiffs moved the court for a writ of enquiry at the next term, which was granted, and the cause was continued. At the succeeding term, the plaintiffs obtained a rule on the defendants to show cause, why a joinder in demurrer should not be entered on the record, and the cause was again continued. At the next term the aforesaid rule was made absolute, and a joinder in demurrer was accordingly filed, and thereupon the county court rendered final judgment for the plaintiff for £400 current money debt, damages and costs, and the defendants appealed to this court. The defendants' counsel then filed the following admission:

I admit that in this case, and that at the February term of *Frederick* county court 1837, I admitted to *Mr. Brengle*, the counsel for the appellee in this case, that one hundred pounds in *Pennsylvania* currency, was the same as one hundred pounds in *Maryland* currency, which is a fact. But I then said and

now say, that a writ of enquiry was not necessary or proper to be issued at that time, to ascertain the damages according to the state of the pleadings. In this I now agree, that if a writ of enquiry could legally and properly have at that time been issued, as the pleadings then and now stand, to have ascertained the value of the damages, and the value of a hundred pounds in *Pennsylvania* currency, in dollars and cents, that the judgment as entered up by the clerk is a proper and correct judgment as if found by a jury of inquest.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY, and CHAMBERS, J.

PALMER for the appellant, contended:

1st. The allegation of profert of letters of administration, in the plaintiff's declaration, is defective in form, in as much as it does not set out and shew, by what court the letters were granted, so that the court can see that they were granted by a court of competent jurisdiction. 2 *Chitty's Plea.* 35. *Cro. Eliz.* 838, 879, 970.

2nd. This action is instituted on four bonds of £100 each, executed in the State of *Pennsylvania,* and payable in current and lawful money of that State, and the plaintiff in his declaration has not averred the value of said foreign money in current money of *Maryland.* 2 *Chitty's Plea,* 167, 169. 1 *Harr. Ent.* 380, 542, 615. 1 *Barr. & Cres.* 16. 8 *Com. Law Rep.* 11. 1 *Wilson,* 185. 11 *Wheat.* 171. *Act of* 1781, *ch.* 16. 4 *Harr. & McHenry,* 199. *Selverton,* 80. *Cro. Eliz.* 536. *Cro. Jas.* 88, 618.

3rd. The plaintiff neglected and refused to join in the demurrer in this case filed, which operated as a discontinuance of his action, and the court below, in rendering judgment for the plaintiff on the demurrer without a joinder therein, erred, and the court, in suffering the plaintiff to file his joinder in the demurrer at the term next succeeding the term at which the judgment was rendered, was also in error under the circumstances of the case. *Gould Plea.* 473. 3 *John.* 526.

BRENGLE for the appellee.

The first point is, that the special cause of demurrer assign-ed is good and sufficient.

The second, that there ought to have been in the declaration an averment of the value of the *Pennsylvania* pounds, mentioned in the bonds, in dollars and cents.

And the third, that there was error in permitting the plaintiff to amend the record by filing his joinder in demurrer at the time, and in the manner he did in this case.

The profert of the letters of administration is sufficient. It is in these words: "And the said *John Jones* brings here into court, letters of administration on the personal estate of said *Peter Earther*, unto him granted, whereby it sufficiently appears unto the court here, that he hath execution thereof." It is contended, in support of the demurrer, that this profert in curia of the letters is defective in this, namely, that it does not set out by what court the letters were granted. In reply to this it might be sufficient to say, that the form of making profert of letters of administration adopted in the declaration, is the same as that prescribed in *Evans' Harris, vol.* 1, *p.* 104. The form of profert in 2 *Chit. P.* 34, of letters testamentary is also the same, but that of letters of administration is different; in this latter it stated by whom the letters were granted. It is submitted, that there is no ground for the difference. The plaintiff, administrator, makes profert of his letters for what purpose? It is done to enable the defendant to have oyer of them, to have them produced and tried by inspection, &c. The fact of plaintiff's being administrator must appear, and the mode in which this is done is by *profert in curia* and oyer, unless the defendant by his plea admit the fact. This is generally the case when the general issue is pleaded to an action by an administrator. If then this be the object of pleading with profert in curia, is it not as well attained by the form adopted in the declaration, as it may be by the most particular one. If in this case the defendant had craved oyer of the letters, the plaintiff would have been obliged to have produced

letters of administration granted by the proper tribunal and in due form, &c., else he would have failed in his suit.

*Second Point.* The declaration is upon bonds made payable in *Pennsylvania* pounds, and there is no averment of the value thereof in dollars and cents, the established currency of the land. This averment might have been made, and so are some of the forms, but it is not essentially necessary. It is stated fully and sufficiently in the declaration, that the currency in which the sums of money mentioned in the bonds is payable, is *Pennsylvania* currency. This is fully manifested to the court. Now I contend that the rule of law on this subject is, that either the value of the foreign currency must be averred in the declaration, or it must appear therein that the currency mentioned in the bond or bill sued upon, is foreign. Either is sufficient, and both are not necessary. *In Simmonds vs. Parmenter and Barrow,* 1 *Wilson's Rep.* 185, this point was decided in favor of the plaintiff. That was an action upon a bill of exchange by the drawer vs. drawee; the bill was for four thousand dollars, in gold or silver, which in England is foreign money. The declaration, in the usual form did not aver the value of the said four thousand dollars in English money. The defendant demurred, and also pleaded *nul tiel record,* and two issues were joined, one upon the demurrer and the other upon the plea. The demurrer was argued, and judgment thereon entered for the plaintiff, and the writ of enquiry was executed. Afterwards in arrest of judgment, it was objected that there was no averment of the value of the four thousand dollars in English money. This objection, as well as others taken, were overruled, and judgment entered for the plaintiff. The judgment was afterwards upon writ or error, affirmed in the House of Lords. This case and the case at bar are alike; the bill of exchange in this case, like the bonds in the case at bar, is payable in foreign money; the declaration, like that at bar, contains no averment of the value of the foreign in domestic currency, and the demurrer taken, made and presented the same question that is made here. Perhaps this question might not have been open to argument upon the

motion in arrest of judgment, yet it was so upon the demurrer in the first instance, and afterwards in the House of Lords upon the writ of error. The same point was so decided in 4 *Bro. Parl. Cas.* 604. In 5 *Barn. & Alderson, p.* 885, *Arden vs. Connell,* it is expressly said, that in an action of debt for foreign money, a jury must find the value, and that by writ of enquiry. *Chitty on Bills,* page 583, edition eighth American from eighth London, says, "The statement in a declaration on a foreign bill of the value of the foreign money seems unnecessary, if it otherwise appear the money was foreign." He cites in support of this the cases before referred to, of 1 *Wilson,* 185, *and* 4 *Bro. Parl. Cas.* 604. It is needless to say that *Chitty* is of no weak authority. The same doctrine is laid down in *Saunders' Evidence and Pleading,* vol. 1, *marginal page* 262. In 2 *B. & A. p.* 301, the court intimate strongly that it is sufficient to state in the declaration that the currency in the bond or bill is foreign, and of what currency. And see *Peters' Abrt.* vol. 10, p. 634, writ of enquiry. These cases establish two positions; the one, that it is unnecessary to state in the declaration the value of the foreign money; and the other, that the writ of enquiry is the proper and usual mode in an action for foreign money, to ascertain the value thereof in domestic money. The last position seems to be conceded in the books, and if so, it argues very cogently in support of the position that it is unnecessary to state the value of the foreign money in the declaration. For if the value be stated in the declaration, it is submitted that there is no use in any case for the writ of enquiry. Independent of authority, how does the point stand upon principle. Why should not a declaration upon a foreign bill and for a certain amount of foreign money be good without stating the value thereof. The defendant cannot be injured. He has every opportunity to defend the claim of the plaintiff, and if the plaintiff succeeds, he only establishes his right to a certain amount of foreign money. And the value of this in domestic money may be ascertained by a writ of enquiry, or an order in the nature thereof, and upon its execution every opportunity is offered to

the defendant to protect himself against any unjust and incorrect valuation of the foreign money.

*Third Point.* The question here arises upon these facts: At the October term of *Frederick* County Court in the year 1836, the case came up for trial upon the demurrer to the declaration. The demurrer was argued without, as is usual, a joinder in demurrer being entered; and judgment upon the demurrer was rendered for the plaintiff. Thereupon a motion for an order in the nature of a writ of enquiry to be executed at the bar of the next term was made, and the cause continued to the following term, which was the February term, 1837. At this term a rule was laid upon the defendant to shew cause why a joinder in demurrer might not be filed *nunc pro tunc.* This rule was served upon the defendant's counsel at the bar, and at the same term it was laid. At the following October term, 1837, the rule was argued on both sides, and made absolute.

The amendment thus allowed to be made, is obviously just and right. The omission to enter the joinder in demurrer is what happens frequently, and indeed in practice in the county courts the demurrer itself generally concludes the pleadings. So far as the court may be informed, the amendment is in advancement of justice. I speak from the record, because we are not permitted here to enquire about the merits of the case. If we were, it might readily be shewn that the amendment advances the equity and justice of the case. But looking only to the record, is it not most apparent that the amendment made by filing the joinder in demurrer was to promote justice. The demurrer was argued upon the supposition that the joinder was entered, and the court in rendering judgment, as well as the counsel in arguing the demurrer, took it for granted that the issue in law was duly made up, or that the case was to be argued as if made up. This was impliedly understood all round. It would now be wrong to permit the defendant to take advantage of this omission; an omission to which he equally contributed. The cases support the judgment of the court. In *Sager vs. Pocock, Cowper,* 407, a similiter was inserted after verdict. Here there was no issue in fact, and yet the court permitted

the amendment to be made, by adding the similiter, and that after verdict. One of the reasons assigned by the court for their decision, strongly applies to this case. It is in these words: "By amending the court only make right, which the defendant himself understood to be so by his going down to trial." In *Mara vs. Quin*, 6 *T. R.* 1, the plaintiff was permitted to amend his judgment by making it a judgment of M. Term, 1791, instead of M. Term, 1793. In this case ASHURST J., says: "It is admitted that amendments have been made at all times in order to forward the justice of the case." Again, "the rule is to make the particular amendment desired, if it be necessary to answer the justice of the case." See the case of *The King vs. the Mayor of Grampound*, 7 *T. R.* 699, in which *Ld. Kenyon* says, "I wish that that could be attained, that Ld. Hardwicke in the case before him lamented, could not be done, namely, that these amendments were reduced to some certain rules, but there being no such rule, each case must be left to the sound judgment of the court, and the best principle seems to be that on which Ld. Hardwicke relied in the same case, that an amendment shall or shall not be permitted to be made, as will best tend to the furtherance of justice. Amendments of this kind are not made under the statute of *Jeofails*, but under the general authority of the court." In *Close vs. Gillespy*, 3 *John. Rep.* 526, the judgment was regularly signed and docketed, but by mistake the name of the defendant's attorney was not signed to the plea. Execution had been issued by the plaintiff as well as by *Muncius*, who had obtained judgment subsequently against the defendant. Upon motion by the plaintiff he was permitted to amend the record, by adding the name of the defendant's attorney to the plea on file, &c. SPENCER, J., in delivering the opinion of the court said, "I cannot discover any difference as to allowing an amendment, whether the mistake has happened through the omission of an attorney or of the clerk, both are equally officers of the court." This case seems to be exactly in point, and is a strong case, because the object of the amendment was to obtain a preference for the execution of the plaintiff over that

of Muncius. In 3 *Cowen*, 39, *Chichester and Van Wyck vs.
Cade and others*, a judgment was also permitted to be amend-
ed *nunc pro tunc*, although a subsequent judgment was there-
by affected. The facts were, judgment and execution were
had by A against B, but by accident the record was not filed.
Afterwards judgment and execution were had by C against B.
Both executions were levied upon the same personal property,
which was sold, and the avails paid over in proportions to A
and C, by order of the court, before C discovered that A's
judgment was imperfect. C on discovering this applies for a
preference as to the whole of the money. This was denied
him, and A was permitted to file his record *nunc pro tunc*. The
court in delivering their opinion say: "The whole tenor and
scope of the cases appear to call for a very extensive exercise
of discretion in the amendment of the proceedings, conducted
in good faith, by filling chasms which may have intervened
through accident or mistake." The doctrine established by
the cases seems to be, that the court may and will permit any
amendment in the proceedings which is necessary to answer
the justice of the case, or in the words of Ashurst, J., in the
case above cited, "the rule is to make the particular amend-
ment desired, if it be necessary to answer the justice of the
case."

In relation to the second point, I omitted to say, that the
writ of inquiry, or order in the nature thereof, is superceded
by the agreement filed in the case as a part of it.

Stephen, J., delivered the opinion of the court.

Three questions for decision have been raised during the
discussion of this cause.

To the plaintiff's declaration a special demurrer was filed,
and the cause of demurrer alleged, was, the insufficiency of the
profert of the letters of administration.

The profert is in these words:—"and the said *John Jones*
brings here into court letters of administration on the personal
estate of said *Peter Earther* unto him granted, whereby it suf-
ficiently appears unto the court here, that he hath execution

thereof." In the declaration he alleges himself also to be the administrator of *Peter Earther*, as whose representative he instituted the action. We cannot under these circumstances think, that the demurrer was well taken. The profert of the letters of administration in construction of law placed them in the hands of the court of whom oyer is prayed, and not of the party.

In 2 *Harr. & Gill*, 86, this court have said, where a deed is pleaded with a profert *hic in curia*, the very deed itself is by intendment of law immediately in possession of the court, and therefore, when oyer is craved, it is of the court, and not of the party; and after *oyer* is craved, the deed becomes parcel of the record, and the court must judge upon the whole." So *Gould*, in his pleadings, 438, says, "the practical use of a profert in pleading appears to be, that it enables the court to inspect the instrument pleaded, the construction and legal effect of which are matters of law, and entitle the adverse party to *oyer* of it."

The court then in this case were sufficiently informed of the right of the party to sue, and that the letters were granted by the proper jurisdiction, by the inspection of them. The court below, therefore, did not err in their decision upon this point.

Another ground of objection raised to the judgment of the court below was, that the court permitted the record to be amended, by suffering the plaintiff to join in demurrer a term after the judgment had been entered. Without positively deciding this question, which it is unnecessary to do, we incline to think that, there is nothing in the objection. The joinder in demurrer is in the nature of a *similiter* in the case of an issue in fact, where the case is decided upon the demurrer. In *Stephen on Plea*. 78, it is said, the tender of the issue in law is necessarily accepted by the plaintiff, for he has no ground of objection either to the question itself, or the proposed mode of decision. "He is therefore obliged to accept or join in the issue in law; and does so by a set form of words, called joinder in demurrer."

But we think that the third objection is fatal to the plain-

tiff's right of recovery.   Upon that point, (the 2nd point of the appellant in his statement,) upon the authorities adduced, there seems to be no ground to doubt.   It was essentially necessary to aver in the declaration, the value of the *Pennsylvania* money, for which the suit was brought.   Our courts cannot take notice judicially of the value of foreign coin; and therefore, where such a suit is brought for a foreign currency, the value ought to be averred in the declaration, or the defect will be fatal on general demurrer, the office of which the special demurrer performed in this case, as well as that for which it was designed by the pleader.   This principle of pleading, and the necessity for such an averment, were fully sustained by the authorities referred to in the course of the argument. We therefore think that the judgment of the court below was erroneous, and ought to be reversed.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.