STATE OF MARYLAND use of C. D. KELLEY et al. vs. THOMAS B. WILSON et al.

*Action on Tax Collector's Bond—Pleading—Variance Between Declaration and Bond - Liability of Collector's Bond for Proceeds of Property Sold for Taxes.*

The averment in the declaration in an action on a bond by two or more equitable plaintiffs that one of them had assigned his interest in the subject matter to another is not a ground of demurrer to the declaration.

The declaration in a suit on tax collector's bond, which in a public record, is not liable to demurrer on the ground that it does not make profert of the bond.

A variance between the condition of the bond sued on and the condition of the bond as set forth in the declaration in a suit on it is ground for a general demurrer.

The condition of the bond of a tax collector was that he "shall well and faithfully execute his office and the several duties required of him by law, and shall well and truly account for and pay to the county commissioners of Kent county or their order, the several sums of money which he shall receive for the county or be answerable for by law at such time as the law shall direct." In an action on the bond the declaration alleged its condition to be that the collector "should well and faithfully execute his office and the several duties required of him by law and would well and truly account for and pay *all moneys* which might be received by him as said collector and be answerable for by law at such times as the law may direct." *Held*, that there is a variance between the condition set forth in the declaration and that in the bond, and that therefore a demurrer to the declaration should be sustained.

Code, Art. 81. sec. 51, directs tax collectors to sell the property levied on for taxes, retaining out of the proceeds of sale the amount of the taxes due from the delinquent with interest and costs, and to pay the surplus if any, to the owner of the property. A subsequent section of that article provides for a report by the collector of the sale for taxes to the Circuit Court for the county and for its ratification, but makes no provision for the distribution of the proceeds of sale under an audit. A declaration in a suit on a tax collector's bond alleged he had failed to pay over the surplus proceeds arising from a tax sale in the manner directed by an audit. *Held*, that this declaration is bad upon demurrer since it does not appear that the Court had the power to state an audit binding upon the collector, or that the person named in the audit was entitled to the proceeds of sale as owner under said section 51.

When land is sold for non-payment of taxes the collector's bond is liable to the owner for any surplus of the proceeds of sale after payment of taxes and costs under that part of the condition of his bond which provides that he shall well and faithfully execute his office and the several duties required of him by law.

*Decided January 7th, 1908.*

Appeal from the Circuit Court for Kent County.

The cause was argued before BOYD, C. J. BRISCOE, SCHMUCKER, BURKE and ROGERS, JJ.

*Hope H. Barroll* and *J. Walter Lord*, for the appellant.

*William M. Slay* (with whom was *Wm. W. Beck* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an action upon the bond of William H. Coleman, who was a tax collector in Kent County, against three surviving sureties, the principal and the other sureties being dead. A demurrer to an amended declaration was sustained, and judgment being rendered for the defendants on the demurrer, the plaintiffs took this appeal. The defendants craved oyer of "the writing obligatory in said declaration mentioned and of the condition thereof," and set out the bond and condition in their demurrer.

1. It is contended by the appellees that the declaration is defective because it alleges that C. Decatur Kelley, one of the equitable plaintiffs, had assigned all his interest in the fund sued for to Adam N. Kelley, the other equitable plaintiff. But we cannot see how the defendants can possibly be injured by his being made an equitable plaintiff, and we will not further discuss that ground of demurrer.

2. It is next contended that the demurrer was rightly sustained because of a variance between the condition of the bond set out in the declaration and that in the bond itself. There was no profert of the bond or condition. That is no longer necessary, "but the opposite party shall be entitled to oyer in the same manner as if profert was made." Sub-section 106 of section 24, of Art. 25 of Code. As we have said, the defendants prayed oyer of the bond and condition, and set them out in full in the demurrer. It may aid us in the consideration of this point to see the effect of that action of the defendants, assuming a variance to exist. As under our statute the opposite party is entitled to oyer "in the same manner as if profert was made," it is "only in those cases in which heretofore profert was necessary." 1 *Poe*, sec. 748. One of the exceptions to the rule requiring profert was of public records, and

in a suit on a bond, the original of which is filed with the Clerk—such as a trustee's or an executor's bond—profert was not necessary, and "Now, no profert being necessary, the defendant has no right to crave oyer—a copy being equally accessible to him as to the plaintiff, but if he does crave it, his demand will be sufficiently complied with by the production of a certified copy." 1 *Poe*, sec. 748. As a tax collector's bond is required to be recorded in the office of the Clerk of the Circuit Court (sec. 33 of Art. 81), what we have just said would apply to it. Under the old system when a record was pleaded, although profert was not necessary, the omission to insert *prout patet per recordum* was a fatal defect, but it was a cause of *special* demurrer; *Shafer* v. *Stonebraker*, 4 G. & J. 345, and the failure to crave oyer of a bond could not be reached by general demurrer, but could only be availed of by *special* demurrer. *State, use of Moore,* v. *Mayugh,* 13 Md. 371.

"Formerly, if oyer was improperly demanded, and the instrument was stated upon it, the pleading was fatally defective on *special demurrer*. Now, however, the result of the statutory provisions dispensing with profert and abolishing special demurrers, is to put an end to nearly all of the technical rules upon this subject. Accordingly, a declaration or plea is not defective for omitting to make profert, nor is any pleading defective for craving oyer where oyer was not demandable." 1 *Poe*, sec. 748. Mr. Poe also says that in practice it is usual to comply with it, although it cannot be insisted on in any case except where profert, before the statute, was requisite. So although oyer could not be properly demanded in this case, it was complied with and became a part of the record. *Birckhead* v. *Saunders*, 2 H. & J. 82; *Brown* v. *Jones*, 10 G. & J. 334; *Tucker* v. *State*, 11 Md. 322; *Coulter* v. *Trustees*, 29 Md. 74.

3. The defendants can avail themselves by general demurrer of a variance between the condition of the bond and the allegations of the declaration. 16 *Ency. Pl. & Pr.*, 1088; *Anderson* v. *Critcher*, 11 G. & J. 450; 1 *Poe*, sec. 713, and cases above cited. We will therefore consider the question of

the alleged variance.  The declaration alleges the condition
to be that Coleman "should well and faithfully execute his
office and the several duties required of him by law, and would
well and truly account for and pay all moneys which might
be received by him as said collector, and be answerable for
by law at such times as the law may direct," &c., while
the condition in the bond is that he "shall well and faithfully
execute his office and the several duties required of him by
law and shall well and truly account for and pay to the
County Commissioners of Kent County or their order the sev-
eral sums of money which he shall receive for the county or
be answerable for by law at such time as the law shall di-
rect," &c.

There would seem to be little room to question that there
is a variance between the condition, as set out in the declara-
tion, and that actually in the bond; in reference to accounting
for and paying money received by the collector.  In the
former it is alleged to be *"all moneys* which might be received
by him as said collector and be answerable for by law," while
in the condition of the bond it is "shall well and truly account
for and pay *to the County Commissioners* of Kent county or
their order the several sums of money which he shall receive
*for the county* or be answerable for by law."   That part of the
condition is limited to payment to the County Commissioners
or their order, while the declaration alleges it to be "all
moneys which might be received by him as said collector,"
and the breach alleged expressly relies on that construction
of the condition.  If the declaration had simply alleged that
the condition was that he "shall well and faithfully execute
his office and the several duties required of him by law," and
had not undertaken to construe and rely on the subsequent
part of the condition, there would not necessarily have been
a variance, because it is not necessary to set out all the con-
ditions of a bond, but only such as are relied on in alleging
the breaches.  The declaration could then have gone on to
allege that one of the duties required of the collector by law
was to pay over the surplus, after deducting the taxes, with

interest thereon, and costs, to the owners as required of him by sec. 51 of Art. 81, but it did not rely on that part of the condition but on the part which specifically referred to money received, and placed a construction on that which is contradicted by the very terms of the condition of the bond, In the case of *Howard County* v. *Hill*, 88 Md. 111, relied on by the appellees, the bond sued on contained a condition that Hill should pay the money "to such persons and in such manner as the Board of County School Commissioners shall direct"— not as the statute provided to pay "to such persons and in such manner as said board may, *under the provisions of this article*, direct." The suit was brought on the bond, for the use of the Board of County School Commissioners, on the theory that he could only pay out such money as the Board was authorized under the provisions of that Article of the Code to direct, and not such as the board might direct, whether authorized or not by the provisions of that Article. We quoted from *Archer* v. *State*, 74 Md. 450, in reference to the liabilities of sureties that "The obligation is *strictissimi juris*, and nothing is to be taken by construction against the obligors. They have consented to be bound to a certain extent only, and their liability must be found within the terms of that consent." And we held that as the bond did not limit the payments to such persons and in such manner, as the board may "under the provisions of this Article direct," the surety was not liable for money paid out by the principal under the direction of the board, although it was not authorized by that article to direct the payments. That decision however did not hold that an officer or his sureties could not be held under the general terms of the condition, although some specific part of it required by the statute was omitted, if the general terms were broad enough to include the breach relied on, but the surety was discharged because the particular part of the condition provided by the statute, which was relied on, had been expressly omitted, and could not be imported into the bond.

In *Young* v. *State*, 7 G. & J. 253, there was a condition that the Sheriff should "well and faithfully execute the same

office, in all things appertaining thereto," and the sureties were
held liable for the Sheriff's failure to detain a person taken
into execution, although one of his duties prescribed by the
statute—"to detain all persons by him taken into execution"
—had been omitted from the condition of the bond.. That
was on the principle announced in *Farrar* v. *United States*, 5
Peters, 388, where the Court said: "Where the conditions are
cumulative, the omission of one condition cannot invalidate
the bond, so far as the other condition operates to bind the
party." Many similar cases might be cited, and we would have
no hesitation in holding that the general condition in this bond
would be sufficient to hold the collector's sureties liable for
his failure to pay over money which it was his duty to
receive, and he was required by law to pay over, but, as we
have said, in this case the plaintiffs undertook to hold the
sureties liable under the special condition of accounting for
and paying over money which had reference to money paya-
ble to the County Commissioners, and not, as the plaintiffs
construed it, to others. There was therefore a variance
between the condition relied on in the *nar.* and that in the
bond, and under the authorities above cited the *nar.* was
demurrable for that reason.

4. Another ground relied on is that the suit is based on
the fact that an audit was stated and the collector did not
comply with the order of Court ratifying it, and directing him
to apply the proceeds accordingly. It is contended that an
audit was not authorized, and hence the direction to pay over
the money according to the order of ratification is not binding
on the sureties. We do not find any authority in the law,
applicable to tax collectors' sales, for stating an audit. Sec.
51 of Art. 81 directs the collector to sell the property levied
on for taxes "for·cash to the highest bidder, retaining out of
the proceeds of such sales the amount of the taxes due from
such delinquent, with interest thereon, together with all the
costs incurred in making the sale and paying the surplus, if
there be any, to the owner thereof." Sec. 53 of that Article
does provide for reporting the sale to the Circuit Court for the

county, and for its ratification, if no sufficient cause to the contrary be shown, but it does not provide for the distribution of the proceeds of sale by an audit, under the direction of the Court. The collector is in terms required to pay the surplus "to the owner thereof," and if an audit be stated which erroneously distributed the proceeds to some one other than the owner, the sureties might be subjected to a liability which they never assumed, if the appellants' theory be correct. In the absence of some provision in the law authorizing such a distribution of the fund, the Court had no power to direct it, and the sureties would not be responsible, even if it was done at the instance of the collector. This case well illustrates the danger of such a practice. It is alleged that Coleman "sold certain real estate belonging to the devisees of Thomas Kelley to pay the taxes levied on the same for the year 1889," that he had an audit stated under the direction and supervision of the Court and out of the proceeds of sale made by him there was by the said audit allowed to C. Decatur Kelley for his life and after his death to his eldest son, Adam Nathaniel Kelley, and should he die before reaching manhood to, Francis Elmer Kelley, eldest son of Thomas Kelley the sum of $505.85, &c. It is not even alleged that the equitable plaintiffs were the devisees of Thomas Kelley, but unless they were and were entitled to the surplus as owners of the property sold, the collector would not have been protected by the audit. If the collector could not safely determine to whom the surplus was due, he could have instituted some appropriate proceeding to which all persons interested were made parties, by which it could be determined, but the Circuit Court for Kent County was not authorized to do so, simply because the report of sale was made to it and it was authorized to ratify the sale. If the statute had intended the proceeds of sale to be distributed under the supervision of the Court ratifying it, it would doubtless have so provided, but it not only does not do that, but, as we have seen, it provides that the collector shall pay the surplus, if any, to the owner. Under sec. 61 of Art. 81 of the Code of 1860, the collector was re-

quired to pay the surplus to the Clerk of the Court, and now in Baltimore City the collector pays the surplus over to the City Register, but in the counties he must now pay it to the owner.    It would seem clear, therefore, that so far as the *narr* discloses the Court had no power to have an audit made; and to order the collector to apply the proceeds accordingly, and yet the failure of Coleman to obey the order, and the refusal of the defandants to pay the amount so authorized, is made the basis of this action.

We have no doubt, as we have already said, that a tax collector's bond is liable to the owner for any surplus in his hands from the proceeds of sales of property sold by him for taxes, under the part of the condition of his bond that he "shall well and faithfully execute his office and the several duties required of him by law;" but for the reasons we have stated we are of the opinion that the *narr* is defective, and the demurrer was properly sustained.    We will therefore affirm the judgment; and although we will not now award a new trial, as we are authorized to do by sec. 22, Art. 5, in proper cases, we will grant the appellants leave to make the application if they so desire, and then determine whether it shall be awarded.

> *Judgment affirmed, the equitable plaintiffs to pay the costs above and below.*