MORRIS SCHAPIRO ET AL. *v* FREDERICK J.
CHAPIN ET AL.

[No. 40, April Term, 1930.]

*Decided June 24th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edward J. Colgan, Jr.,* with whom were *Francis Key Murray* and *Karr & Colgan,* on the brief, for the appellants.

*Reuben Oppenheimer* and *Eli Frank, Jr.,* with whom were *Emory, Beeuwkes, Skeen & Oppenheimer,* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

On October 28th, 1927, Herbert E. French, of Washington, D. C., and Morris Schapiro (appellant), of Baltimore, entered into a written agreement for the purchase by the former from the latter of a farm of 1,250 acres in Howard County, Maryland, and the personal property thereon, in consideration of the payment by French to Schapiro of $65,000 cash and the conveyance of five improved lots in Washington, subject to certain incumbrances thereon. One of the parcels of Washington property to be conveyed to Schapiro was "the premises known as 1404 N. Capitol Street * * * same being subject to a first deed of trust in the amount of $5,000, being a building and loan association loan payable at the rate of $65 per month until paid, and a second deed of trust in the amount of $1,900, payable at the rate of $45 per month with interest at 6% per annum until paid, said loan to run until paid."

The agreement, which was signed by H. E. French and Mabel P. French, his wife, and Morris Schapiro and Rebecca Schapiro, his wife, provided: "That settlement and exchange of the above mentioned properties must be consummated within thirty days hereof, or as soon thereafter as titles are ready, *adjustment to be made as of Nov. 1st, 1927.* That Eugene H. Taggart, Inc., *Bought* (should be Brodt) *Realty Co. and F. J. Chapin* are representing the contract-

ing parties hereto and that the regular rate of commission established by the Real Estate Board of Washington, D. C., will be paid by both parties hereto, with their full consent as to any arrangement as to pooling and dividing said commission with the brokers associated in this transaction."

Immediately following the signatures of the owners in this rider or addendum: "*It is understood that the brokers above mentioned are to accept title, as conveyed of 1404 N. Capitol Street as full commissions for full services rendered unto the party of the second part* (Schapiro). *We hereby ratify above. E. H. Taggart, Brodt Realty Co., F. M. (?) Brodt President, F. J. Chapin.*

A printed form of contract was used and the portions of the contract herein italicized were either typewritten or written by hand. The signatures were written by the parties interested.

The suit was in assumpsit on the six common or money counts and two special counts (7 and 8), setting up the appellees' view of their rights, that it is a contract for the sale of real estate to a purchaser procured by a broker "and the person so procured is accepted as such by the employer" on "terms acceptable to the employer and such contract is accepted by the employer and signed by him," whereby the agent is entitled to his commissions under the provisions of the Code, art. 2, sec. 17 (Act of 1910, chapter 178), and the court in its rulings on the demurrers evidently agreed with the appellees' contention.

The appellants craved oyer of the agreement, which was complied with by the appellees. The appellants then demurred to the declaration and each count thereof and the demurrer was overruled. When the contract was filed it became part and parcel of the declaration as if profert had been first made (*State, use of Kelley, v. Wilson,* 107 Md. 132; *Tucker v. State,* 11 Md. 322; *Birckhead v. Saunders,* 2 H. & G. 82; *Poe on Pleading,* sec. 768; 49 C. J. 609); and if the agreement declared on in the seventh and eighth counts "is not the agreement given on oyer, either according to its tenor, or true intent and meaning," then the demurrer should

have been sustained as to those counts. *Anderson v. Crichter,* 11 G. & J. 450, 455; *State, use of Kelley, v. Wilson, supra; Poe on Pleading,* sec. 713.

The declaration ignores the addendum or rider signed by the brokers, and merely alleges in the seventh count that the appellees, upon the execution of the contract by the appellants, were entitled to "reasonable compensation," and in the eighth count "that in the said contract the defendants agreed to pay commissions to the plaintiffs in consideration of their said services and of obtaining the said purchaser (French) for the said farm," and then charges that the defendants have failed and refused to pay any of the commissions claimed under the contract.

The first difficulty we encounter is that there are two inconsistent provisions for the payment of brokers' commissions, and, if they cannot be reconciled, then we must decide which of them prevails. The printed portion of the contract states that the appellees "are representing the contracting parties hereto (French and Schapiro) and that the regular rate of commission * * * will be paid by both parties hereto (French and Schapiro)." By the typewritten addendum covering the same subject matter (commissions) "It is understood that the brokers * * * are to accept the title, as conveyed, of 1404 N. Capitol Street as full commissions for full services rendered unto the party of the second part (Schapiro)," the equity in the property so to be conveyed being estimated at $8,100, which was the amount of the verdict on which judgment was entered. In the printed portion we have French and Schapiro agreeing to pay the regular rate of commissions established by the Real Estate Board of Washington, and in the addendum or rider the brokers agree to accept from Schapiro alone the title to 1404 N. Capitol Street "as full commissions for full services." If the printed portion of the contract is to be accepted, and we are to regard the rider as merely substituting property for such cash commissions as are customarily paid in Washington, the appellees would be entitled to recover under the provisions of the Act of 1910, ch. 178, and the declaration would

be good. But this is not our construction of the contract, and in the view of this court the two provisions for commissions are not reconcilable, and when the rider was added it cancelled the printed provision as to Schapiro and was so intended; else why was it written and added to the printed form of contract?

In *Williston on Contracts*, sec. 622, it is said that "Where part of the contract is in writing and part is in printing the writing will be given effect if there is repugnancy between the two portions of the instrument"; and in *Brantly on Contracts* (2nd Ed), p. 292: "When the contract is partly written and there is a conflict between the two parts, that which is written will prevail over the printed part because it is presumed to have received closer attention," and it might be added, "because as printed it was not satisfactory to the party to be charged." It is apparent that the printed form of contract was furnished by Eugene H. Taggart, Inc., its name being printed in capital letters in the paragraph covering commissions, and it is manifest that as printed it did not suit Schapiro, hence the addition providing for the conveyance of 1404 N. Capitol Street to the appellees "as full commissions."

The purpose of the agreement between French and Schapiro, who had been brought together by the appellees, was the exchange of the parcels of real estate and personal property mentioned in the contract and the payment of $65,000 of cash to Schapiro, and each of the parties accepted in writing the other as purchaser. If the agreement had stopped there, the parties would have been bound to pay commissions under the Act of 1910, chapter 178, unless "performance of such contract" had been "prevented, hindered or delayed by any act of the brokers." The rider or addendum signed by the brokers contemplated the conveyance of No. 1404 N. Capitol Street from French to Schapiro, and that depended on French's ability to pay Schapiro $65,000 cash for the latter's farm. Schapiro was to take French's property, all of which was mortgaged, but was not to give up his property until French was prepared to pay the difference in cash. It

was only natural then that Schapiro should have protected himself against a large claim for brokers' commissions by making the payment of commissions contingent on the consummation of the contract, and this we think he did by agreeing (for that is what he did by his acceptance of the brokers' addendum or rider), to convey 1404 N. Capitol Street to the appellees. They were to accept the title to that property "as conveyed," that is, as to be conveyed by French to Schapiro, then by Schapiro to the appellees. Until conveyed to Schapiro he could not comply with the terms of the only part of his agreement applying to commissions. Any action taken by the brokers against the appellants would be to obtain a deed for No. 1404 Capitol Street or recover damages for the failure to convey in accordance with their agreement; the subject matter of the agreement, so far as the commissions were concerned, was No. 1404 Capitol Street, for which they were "to accept the title as conveyed."

The statute, Act of 1910, chapter 178, provides that "in the absence of special agreement to the contrary," a real estate broker is entitled to the "customary or agreed commission" when "he procures in good faith a purchaser, seller, etc., and the person so procured is accepted as such by the employer and enters into a valid, binding and enforceable written contract of sale, purchase, lease, mortgage, loan or other contract, as the case may be, in terms acceptable to the employer, and such contract is accepted by the employer and signed by him." The form of contract submitted by the brokers provided for commissions to be paid in cash. This apparently was not agreeable to Schapiro and resulted in the substitution of a conveyance of property which he did not own and which he could only acquire from French in accordance with the terms of their contract. When Schapiro accepted the agreement to convey 1404 N. Capitol Street to the brokers, he pledged his good faith to do whatever was necessary to acquire title in pursuance of his agreement with French, and to that extent the fortunes of the brokers were bound up in the agreement between French and Schapiro. In this case we hold that the part of the agreement providing for the

payment of commissions is not within the terms of the statute and that it is a "special agreement to the contrary." It is therefore necessary for the appellees, in suing the appellants, to show wherein they have violated their contract to convey the premises agreed to be taken in payment of commissions. The evidence shows that no conveyance was made by French to Schapiro, and the latter cannot therefore perform that part of the contract which requires him to convey No. 1404 N. Capitol Street to the appellees, though this observation has no bearing on our decision on the sufficiency of the declaration, as evidence subsequently taken cannot be considered in passing on a demurrer. *Victory Sparkler Co. v. Francks,* 147 Md. 368, 372.

The appellees urge the decision in *Alvord v. Cook,* 174 Mass. 120, as authority for their contention that the appellants are bound to pay regardless of the outcome of the contract between French and Schapiro. The rule there laid down as a basis of recovery was not the rule in this state until the passage of the Act of 1910, which was twelve years after the decision in *Alvord v. Cook.* The rule in this state until the passage of the act was, as stated in *Riggs v. Turnbull,* 105 Md. 135, that a broker was not entitled to his commissions from a vendor if the purchaser procured by him failed or refused to pay the purchase money, even though a binding contract of sale was executed by the vendor and purchaser, and that the undertaking to procure a purchaser required the one so undertaking to produce a party ready, willing, and able to buy. The fact was, as stated in the opinion in *Alvord v. Cook,* that "the defendants have neglected to take reasonable means to get the Antwerp Street property (the equity in which was to be conveyed to the brokers), and so have become by their own voluntary conduct unable to carry out their contract wih the plaintiffs. We think they cannot in this indirect manner do what they cannot directly do, namely, repudiate their contract; and it follows that there has been a breach for which the defendants can be held in the absence of any other defense." And it appears to us to recog-

nize the contention of the appellants, that the declaration should allege such a breach of contract by the appellants.

The appellees' only recourse then is to sue for the value of the equity, but they must allege, however, such breaches by Schapiro of his contract with French as would entitle them to recover either by showing his unreadiness, unwillingness, or refusal or failure to exercise due and reasonable diligence to enforce his agreement against French. *Rumsey v. Livers,* 112 Md. 546; *Dimmick v. Hendley,* 117 Md. 458; *Baltimore v. Maryland Pavement Co.,* 130 Md. 454; 1 *Poe, Pl. & Pr.,* sec. 536.

In the instant case no question arises as to the performance of the contract by the plaintiffs (appellees), and as far as they are concerned the only question open is the payment of commissions by the appellants, which under the contract depends on their willingness and readiness to perform and the enforceability of their contract with French and his ability to pay. *Hinds v. Henry,* 36 N. J. L. 328; *Riggs v. Turnbull,* 105 Md. 135.

For the reasons herein stated, in the opinion of this court, the appellants' demurrer to the appellees' declaration should have been sustained. As all the subsequent rulings of the court to which exceptions were taken were consistent with the theory of the declaration as filed, and will not arise on a retrial of the case after amendment of the declaration, it is unnecessary to consider them.

*Judgment reversed, with costs, and new trial awarded.*