GEORGE T. MELVIN AND HENRY S. MANCHA *vs.*
J. WEST ALDRIDGE ET AL.

*Obection to the Jurisdiction—Accounting between Principal and Agent
—Commissions of Real Estate Agents on Sales of Property Payable
in Instalments—Interest.*

A bill in equity was filed for an injunction, the rescission of a contract,
   and a discovery and account of money received by the defendants,
   as agents of the plaintiffs, to sell certain lands.   The defendants,
   while denying the material allegations of the bill in their answer,
   professed their readiness to account.   The bill was dismissed as to
   all the relief asked for except an accounting.   No special exception
   was filed to the jurisdiction of equity to decree payment of the sum
   due, but the same was made in the argument below.   *Held,* that
   this objection to the jurisdiction could not be availed of on appeal.

The contract in this case provided that the defendants, as agents of
   the owners of a tract of land, should lay out, develop and sell the
   same in lots and be entitled to certain commissions on sales.   Some
   of the lots were sold under contracts by which the purchase money
   was made payable in instalments.   *Held,*

1st. That the agents are not entitled to the full commission on the
   entire price of a lot out of the first instalment collected by them, but
   are entitled only to commissions on the instalments as paid from
   time to time.

2nd. That when purchasers renounced their contracts and forfeited
   instalments already paid, the agents are not entitled to the whole of
   such instalments.

3rd. That the agents are liable for interest on all amounts collected by them and not paid over promptly to their principals, less their commissions.

4th. That the agents are not entitled to credit for money loaned by them to one of the owners, that being a transaction in which his co-owners were not concerned.

The contract in the above case also provided that, until a certain mortgage incumbrance on the land should be paid, the money arising from the sale of lots should be applied by the owners to the payment of the mortgage. *Held*, that the agents had no authority to collect such purchase money.

Appeal from a decree of the Circuit Court for Anne Arundel County, by which the defendants' exceptions to the accounts stated by the plaintiffs were overruled, and it was ordered that defendants should pay to the plaintiffs the sum of $1,673.27. The plaintiffs, J. West Aldridge *et al.*, being the owners of a tract of land near Annapolis, made an agreement in September, 1889, with the defendants, Melvin and Mancha, copartners, by which the latter were appointed agents to lay out and plat into lots and small farms the plaintiffs' land, and sell the same upon the best terms obtainable, subject to certain restrictions. Among these in the power of attorney executed to the defendants were the following :

"The dwelling houses and other buildings upon the property at this time, and the quantity of ground you may think advisable to plat with them, you are hereby authorized to sell at a price to be concurred in by us, and your compensation on such sales shall be five per cent. upon the amount of sales of such buildings and grounds last aforesaid so sold. You are also authorized to lease any of the buildings and grounds for such time and upon such terms as you may deem advisable, not to interfere with sales. The revenue from the property so rented (until the same shall have been sold), shall be made sufficient for you to pay the usual insurance and taxes upon this entire property, which shall fall due after Dec. 31, 1889, until the expiration of your control thereof; and be made by you sufficient also

to meet the interest on the debt of five thousand dollars (now a lien on this property), which shall accrue from the 31st day of November, 1889, till said debt of five thousand dollars shall have been liquidated by the net proceeds of purchase money from all sales received from time to time, which purchase money shall be thus applied by us. If there should be any excess of rent realized above the amount necessary to pay said items of insurance, taxes and interest, said excess of rent shall be used by you in such repairs and improvements upon the buildings or lands as may be concurred in by us. The rate of eighty dollars ($80) per acre (or in that proportion of price for a smaller quantity than an acre), shall be the lowest limit at which you are authorized to sell any of the lands, unless we shall hereafter agree to reductions or deem it advisable at the beginning of the enterprise to make concessions in price on small lots to persons purposing to erect buildings and other improvements thereon immediately; provided, however, that after one year from this date the lowest authorized price shall net us not less than the rate of eighty dollars per acre, and the eight per cent. per annum increase hereinbefore stipulated.

"We agree to allow you as compensation out of the gross proceeds of such sales, not hereinbefore specified, five per cent. on any lands sold at the aforesaid rate of eighty dollars per acre (or less than eighty dollars per acre in cases of concession), provided such sales shall not yield us less than the rate of eighty dollars per acre (less commissions), or if sold in smaller quantities than one acre, then in that proportion; if sold above the rate of eighty dollars per acre, we agree to allow you an additional commission of twenty-five per cent. of the excess of this rate up to one hundred dollars per acre, and if sold at the rate of more than one hundred dollars per acre, we agree to allow you (over and above the five per cent. and the twenty-five per cent. last stipulated), an additional commission of fifty per cent. of any excess you may obtain above said rate of one hundred dollars per acre."

The bill of complaint was filed by the appellees in December, 1892, and sets forth numerous alleged violations of duty and of their contract, on the part of the appellants, in respect of their management and sale of the property, and in respect of their receiving, accounting for and paying over the proceeds of the sale, and the rents and profits. The bill, among other things, alleges that these agents had sold, in their own individual names, many of these lots, and retained the proceeds of sale; that after demands made upon them by the plaintiffs, they still neglected and refused to pay over such proceeds, or large portions thereof; that even the collecting of the purchase money by them was without warrant of law, or of their contract, and in spite of the protests of the plaintiffs; that these agents had altogether refused or neglected "to discover or render any account of the rents and issues and profits of said real estate," as contemplated by their contract, and until recently "had refused and neglected to discover and render any account of the sales made by them of lots or portions of said real estate." The bill further alleges in substance, that these agents pretend and claim the right to sell lots on the long credit or monthly instalment plan, and to extend their collections of such small instalments over as long a period as they please, and claim to have the right to retain and use the various instalments so collected, until after the last instalment, for any particular lot sold, is paid to them; and that not until then can they be called on to pay anything to the plaintiffs, or even to render an account to them as to such particular lot sold.

It further alleges, that these agents claim that if any purchaser fails to complete his purchase by paying the last or any instalment of his purchase money, then all prior instalments actually paid by such purchaser belong to them, Messrs. Melvin and Mancha, and that in a number of instances they had acted on such claims, and refused to pay over to the plaintiffs any part of such payments, or even to account with the plaintiffs for the same. It alleges, that the

plaintiffs had then recently obtained from the defendants a statement as to lots sold, &c., which, on its face, purported to be "approximately correct," which the plaintiffs denied the accuracy of; that even according to that statement there was over $3,000 in the hands of Messrs. Melvin and Mancha, received by them from these instalment sales, which they were using and enjoying, and refusing to pay any part of to the plaintiffs.

Among other forms of relief, it is asked, that the defendants may, upon their several corporal and respective oaths, answer and set forth full and perfect accounts of the sales of lots and of money received on account thereof, and when and from whom; and of money received by them from rents, issues and profits, and how applied; and may set forth a full and perfect list of all contracts of sale, vouchers, &c., relating to the sale or lease or renting of the property. The bill also asks that an account, or accounts, may be stated, under the direction of the Court, concerning the various sums of money received by the defendants from sales of said real estate and from rents and profits thereof, &c.; that in such accounts the defendants may be credited with their lawful compensation, &c., and that what may be found to be due from them to the plaintiffs, together with lawful interest upon the same, may be decreed to be paid.

The defendants answered, denying most of the allegations of the bill, and in regard to the accounts asked for, stated that they were willing to furnish the same if required so to do by the Court. After testimony was taken, the Court below (REVELL and JONES, JJ.) decreed that the injunction theretofore issued in the cause be dissolved, and that so much of the prayer of said bill as asks for the rescission of the contracts therein mentioned, between the plaintiffs and the defendants, be refused. And further decreed that the plaintiffs are entitled to relief in the premises as to an account or accounts from the defendants, concerning the proceeds of sale of those portions of the real estate in the proceedings mentioned, heretofore sold

by the defendants, or either of them, by virtue of said
contract; and concerning the rents and profits of said real
estate, or the portions thereof which have been under the
control of the defendants, or either of them, by virtue of
said contract. And further decreed, that the defendants'
account with the plaintiffs concerning said proceeds of sale,
and said rents and profits, and that for the purposes of
such accounting, and for such other purposes as the Court
may deem proper and right in the further progress of this
cause, that the bill of complaint be retained.

Thereafter the proceedings set forth in the opinion of the
Court were had and the decree made from which this
appeal was taken.

The cause was argued before ROBINSON, C. J., BRYAN,
McSHERRY, FOWLER, BRISCOE, ROBERTS, and BOYD, JJ.

*Daniel R. Magruder* and *Robert Moss*, for the appellants.

*J. Wirt Randall* and *James M. Munroe*, for the appellees.

FOWLER, J., delivered the opinion of the Court.

The plaintiffs entered into a written agreement with the
defendants, by the terms of which the latter were to take
charge of, manage, lay out and plat into suitable lots
certain lands owned by the former on the south side of
Severn River, about one mile from Annapolis, and to
develop and sell the same under certain conditions, as
stipulated in the agreement just mentioned. It will be
unnecessary for us to rehearse all these stipulations, for
the main contention upon the merits of the case is based
alone upon that which relates to the compensation the
defendants are entitled to.

The plaintiffs filed their bill in the Circuit Court for Anne
Arundel County, charging the defendants with having vio-
lated their contract in almost every particular, and with
having combined and confederated for the purpose of injur-
ing and defrauding the plaintiffs. The bill asked for a

rescission of the contract, an injunction to stay and prohibit the defendants from doing anything further thereunder, and for an account of the various sums of money received by the defendants for the plaintiffs on account of sales of lots, and on account of issues and profits and sales of timber and crops.   The defendants answered, denying all allegations of wrong-doing on their part, and also that there was any ground set forth in the bill which would warrant the abrogation of the contract or the issuing of an injunction as prayed, but expressing a willingness and readiness to account fully whenever required by the Court.   Testimony was taken by both parties, and the cause having been fully argued and submitted to the Court below, the bill was dismissed as to the prayers for abrogation and injunction and held for an account.   There was no objection made to this decree by the defendants, for it only directed them to do what they had already in their answer expressed a willingness and readiness to do whenever required.   By it, however, the Auditor was directed to state the accounts called for, and, for the purpose of convenience and economy, the counsel of the respective parties agreed that the accounts should be stated by the parties or their solicitors from the proceedings and proof, subject to exception, and that in this respect the said decree should be modified.   In accordance with this agreement each party stated and filed an account, and each excepted to that filed by the other.

The Court below adopted that of the plaintiff, and by its order of the 12th October, 1894, overruled the defendants exceptions thereto, except as to the one item of forty-two dollars and thirty-four cents, and sustained all the exceptions of the plaintiffs to the defendants' accounts.   From this decreee of the 12th October, 1894, the defendants have appealed, and have thus presented several questions.

The plaintiffs contend that there is only one question before us, and that is the correctness of the accounts which were ratified below, while the defendants insist that by virtue of their appeal they also bring up the question of the juris-

diction of the Court below to pass the decree of the 27th of April, 1894, by which their bill was in part dismissed, and they were required to account. Although there may be some question as to whether the defendants did or did not consent to the passage of this decree, waiving this objection, we think they are not in a position now to assail it in this Court. Our Code provides (Art. 5, sec. 35) that "no defendant in a suit in equity in which an appeal may be taken shall make objection to the jurisdiction of the Court below, unless it shall appear by the record that such objection was made in said Court." Nor does it avail the defendants that this question may have been made by them in argument below, and was passed upon by the Judge below. This does not gratify the requirements of the section just cited. The objection must be specially taken by exception filed. *Hubbard and Wife* v. *Jarrett*, 23 Md. 66. But, as we have seen, so far from having filed an exception, the defendants offered themselves ready to do what they now contend the Court had no power to require them to do.

The only questions, therefore, now open for review, are those presented by the decree ratifying the accounts filed by the plaintiffs. This account, which is designated as "Account Complainants, No. 1," was ratified by the order of the 12th of October, 1894, with one modification, namely, an additional credit of $42.34 was allowed the defendants, thus making the total indebtedness found to be due by the defendants to the plaintiffs to be the sum of $1,673.27, with interest from the institution of the suit. There was no objection made to the accuracy of the ratified account, but the objections are confined to the principles upon which it is stated. We think, however, there is no error in this respect. The claims set up by the defendant cannot be maintained.

1. Upon a fair and reasonable construction of the contract, whatever may have been the practice of the parties under it, we think it clear that the defendants, as agents, had no authority to collect and receive from the purchasers the proceeds of sales of lots. On the contrary,

the contract itself stipulates that such proceeds should be applied by the plaintiffs to the payment of a debt of $5,000, which was a lien on the property, and that the defendants should make the revenues from the property, until sold, sufficient to pay the taxes, insurance and the interest on said debt of $5,000. That is to say, the plaintiffs were to collect the proceeds of sale, and therewith reduce or pay in full, if possible, said lien, while the defendants were to collect the rents and apply them to interest, taxes and insurance. But this question is not important now, for it appears that the defendants have been, with the consent of the plaintiffs, allowed in the ratified account commissions on all proceeds of sale actually collected.

2. The next claim made by the defendants is that they should have been allowed commissions on the entire purchase money out of the first instalments collected by them. But such a contention is based on neither justice, reason nor authority. It is true that the general rule has often been approved by this and many other Courts, that commissions are earned when the agent or broker finds a purchaser able and willing to complete the purchase according to the terms agreed on, and who ultimately becomes the purchaser. *Kimberly* v. *Henderson et al.*, 29 Md. 515. If the purchase money be not paid by the fault of the vendor, the agent would still be entitled to his compensation. But, as was held in *Richards* v. *Jackson*, 31 Md. 253, the meaning of *Kimberly* v. *Henderson* is that "it is not sufficient to entitle the broker to commissions that the purchaser should enter into an agreement to purchase, but he must actually purchase, by complying with the terms agreed on, unless his failure to do so is occasioned by the fault of the vendor." The only fair and equitable rule where the purchase money is, as here, payable in instalments, is to allow commissions on the instalments as paid from time to time, for until they are actually paid the terms of the sale have not been complied with. Any other construction would only offer inducements to sell for the purpose of securing all of

the commissions out of the first payment. In the case of *McCulloh* v. *Pierce*, 55 Md. 546, it was held that a trustee in the case of a defaulting purchaser should have commissions only on the amount actually collected by him, and it was there said, "any other rule would operate unjustly, and would offer a temptation * * to make sales to irresponsible bidders at extravagant prices without any reasonable expectation that the terms of sale would be complied with." And this language, we think, is particularly applicable here,·though we are not to be understood as intimating that there is any evidence before us to show that the defendants acted in bad faith in this respect. The construction of the contract urged by them would, however, enable unfaithful agents thus to defraud their principals.

3. The defendants claimed, as their own, all instalments paid to them in cases in which the whole purchase money was not paid, and the purchasers have abandoned their purchases. We entirely agree with what the learned Judges below said in regard to this claim. They characterized it as "utterly untenable; not within the terms or spirit of the contract; by no rational construction to be inferred therefrom, and repugnant to every principle of law and equity."

4. Interest was properly allowed. The defendants, as agents, should have promptly paid over to their principals the amounts collected, less commissions, as provided by the contract, and having failed to do so, they have no reason to complain if they are required to pay interest from the institution of the suit.

5. Nor do we see how the Court below could have done otherwise than reject the credit claimed by the defendants for money loaned to J. West Aldridge—that being a.transaction between them and him in which the other plaintiffs are in no wise interested.

Finding no error, the decree of the 12th October, 1894, will be affirmed.

*Decree affirmed.*

(Decided June 18th, 1895.)