## CHASANOW, TRADING AS GREENBELT REALTY COMPANY *v.* WILLCOX

[No. 238, September Term, 1958.]

*Decided June 5, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and HORNEY, JJ.

*Theodore L. Miazga,* with whom were *Miazga & Miazga* on the brief, for the appellant.

*Helen C. Ditman,* with whom were *Walter L. Green, Henry A. Babcock* and *Green & Babcock* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

Abraham Chasanow trading as Greenbelt Realty Company (broker) sued Roger Willcox (seller) in the Circuit Court for Prince George's County to recover commissions for twice selling the same house and lot in Greenbelt to different purchasers. When the court granted the seller's motion for a directed verdict at the close of the evidence offered by the broker with respect to a commission on the first sale, the broker appealed. The case was submitted to the jury with respect to a commission on the second sale and resulted in a verdict for the broker. The seller did not appeal.

In substance, the agreed statement of facts show that the

broker procured an acceptable purchaser for the property at $13,750. The purchaser made a deposit of $700 and entered into a binding and enforceable contract of sale which was accepted and signed by the seller. The broker also joined in the contract. The parts of the contract, here pertinent, provided that:

> "Within sixty (60) days from the date of acceptance hereof by the owner, * * * the seller and purchaser are required and agree to make full settlement in accordance with the terms hereof. If the purchaser shall fail to do so, the deposit * * * may be forfeited at the option of the seller, in which event the purchaser shall be relieved from further liability hereunder, or without forfeiting the * * * deposit the seller may avail himself of any legal or equitable rights which he may have under this contract. In the event of the forfeiture of the deposit, the seller shall allow the * * * [broker] one-half thereof as a compensation for * * * [the broker's] services to * * * [the seller]."
>
> \* \* \* \* \* \*
>
> "The risk of loss or damage * * * by fire * * * until the deed * * * is recorded is assumed by the seller."
>
> \* \* \* \* \* \*
>
> "The seller agrees to pay to * * * [the broker] the regular rate of commission amounting to [f]ive per cent * * * [to be deducted] from the proceeds of the sale * * *. Entire deposit to be held by * * * [the broker] until settlement * * * is made."

At about the time the financing arrangements had been completed, but before settlement, the house was damaged by fire. The seller promptly repaired the damage, but the purchaser would not consummate the transaction because of what he claimed was a "psychological block" against living in property which had been previously damaged by fire, and requested a return of the deposit. The seller refused unless the broker would waive or release his claim for a commission. The broker, insisting that he had earned the commission, refused to waive

it and requested the seller to forfeit the deposit, but the seller declined to do so.

About three months later the broker sold the property a second time to another purchaser. Nothing further was. done about the first sale until the purchaser filed a complaint with the Real Estate Commission. The executive-secretary of the commission notified the broker that the commission would hear the charges if the deposit was not returned, but the broker did not comply immediately. Instead, contending the complaint was not justified, he apprised the commission of the full details of the transaction, but did nothing more until—at a conference with the purchaser in the office of the commission—he was advised by the executive-secretary that the partial destruction of the house by fire entitled the purchaser to a refund of the deposit and that the consent of the seller was not required.

On the next day after the conference, the broker filed a non-resident attachment against the seller for a commission on both sales and returned the deposit on the first sale to the purchaser without the consent or approval of the seller. In a covering letter addressed to the purchaser, the broker made it clear that he was returning the deposit under "pressure" and did not thereby waive or release his right to a commission. He further informed the purchaser that he should not construe the refund as a modification or rescission of the contract of sale.

The trial judge, in directing a verdict for the seller, indicated that he believed the assumption by the seller of the risk of loss or damage by fire had the effect of rescinding the contract when the fire occurred; that such risk was on the broker as well as the seller; that the broker was in no better position to claim a commission than the seller was to insist upon consummation of the sale; and that the purchaser was entitled to a refund of the deposit since the second sale to another purchaser amounted to a rescission by the seller of the sale to the first purchaser.

The broker, claiming that he had done nothing to prevent or hinder the performance of the contract of sale, contends that he had earned the agreed commission under the provisions of Code (1957), Art. 2, § 17, and that the occurrence of the fire did not disentitle him to such commission. On the other hand the seller, claiming that the broker unlawfully deprived him of

his rights when he returned the deposit to the purchaser without permission, contends that the broker precluded himself from claiming any part of the deposit.

Even though it is apparently conceded that the happening of the fire did not affect the right of the broker to a commission or a share of the deposit, we think it is clear that the provisions of § 17, *supra,* do not control the right, if any, of the broker to recover in this case.

It is true, of course, as the broker contends, that the statute provides that whenever a broker procures in good faith an acceptable purchaser, who enters into a binding and enforceable written contract to buy, in terms acceptable to the seller, and such contract is accepted by the seller and signed by him, the broker shall be deemed to have earned the customary or agreed commission, whether or not the contract remains in effect. But the statute is applicable only "in the absence of a special agreement to the contrary," and, in this case, there were two special agreements, one of which was a substitute for the other. There was an agreement that the seller would pay the broker a commission *to be deducted from the proceeds of sale.* However, in the event the purchaser should default it was understood that the seller would allow the broker *one-half of the deposit* as compensation for his services to the seller. Since these are substitutional provisions, affecting the time of payment, source and amount of the compensation to which the broker would be entitled, the statute has no bearing on a decision of this case. *Goss v. Hill,* 219 Md. 304, 149 A. 2d 10 (1959) [commission due and payable upon signing of contract]. Cf. *Borowski v. Meyers,* 195 Md. 226, 72 A. 2d 701 (1950) [sale conditioned on a fact which did not materialize]. See also Restatement, *Agency 2d,* § 445, comment e; 20 A.L.R. 289 (1922); 51 A.L.R. 1399 (1927); 73 A.L.R. 926 (1931); 8 Am. Jur., *Brokers,* §§ 180, 183. *Contra, Deibler v. Graham,* 62 A. 2d 553 (D. C. Mun. App., 1948).

The purchaser having defaulted, there were no proceeds of sale out of which the broker could recover a commission. The only fund, therefore, out of which the broker could be allowed compensation for his services to the seller under the contract, was the deposit which the broker had retained under the terms

of the contract to be split fifty-fifty in case of default and forfeiture. But, when the broker allowed the Real Estate Commission to stampede him into returning the deposit to the purchaser without first having obtained the approval or consent of the seller, there was then no fund to which the broker could look for compensation if he was entitled to any at that time under the circumstances in this case.

It is evident that the facts and circumstances in this case are rife with problems. It so happens that we are chiefly concerned with only one of them: what compensation, if any, is the broker now entitled to? We think the answer to this question necessitates a preliminary inquiry into the rights of the seller, if any, with respect to the refunded deposit. As the trial judge indicated—but for a different reason—it appears that the rights of the broker were inextricably tied in with those of the seller. If, when he defaulted, the seller had notified the purchaser of his intent to forfeit the deposit and had thereafter done so as the broker had requested the seller to do, there is no doubt that the seller could have kept the deposit as liquidated damages under the terms of the contract, and the purchaser's right to a refund of the deposit would have terminated. See *Spellman v. Dundalk Co.,* 164 Md. 465, 165 A. 192 (1933); Annotation, 31 A.L.R. 2d 8, 37 (1953); 91 C.J.S., *Vendor and Purchaser,* § 139b(1). See also *Asher v. Hull,* 207 Okla. 478, 250 P. 2d 866 (1952). But when the seller—or his broker for him—retains the deposit without forfeiting it and thereafter resells the property to another purchaser at the same price it had been sold to the original purchaser, the mere retention of the deposit does not amount to an election to forfeit it. See *Sheffield v. Paul T. Stone, Inc.,* 98 F. 2d 250 (C. A. D. C., 1938). Cf. *Barnette v. Sayers,* 53 App. D. C. 169, 289 Fed. 567 (1923). Instead, the failure or refusal of the seller to give notice of forfeiture may in some instances constitute a waiver of the breach of the contract by the purchaser.[1] See *Parchen v. Rowley,* 196

---

1. A different rule prevails, however, when there has been a clear-cut abandonment. See Asher v. Hull, *supra; Lutz v. Cunningham,* 240 Iowa 1037, 38 N. W. 2d 638 (1949); 91 C.J.S., *Vendor and Purchaser,* § 139b(1)(6).

Wash. 340, 82 P. 2d 857 (1938); *Foreman Trust & Savings Bank v. Bartlett,* 324 Ill. 238, 154 N. E. 904 (1927). For instance, upon a resale of the property without loss to the seller, the original purchaser becomes entitled to demand and recover the deposit. See *Sheffield v. Paul T. Stone, Inc., supra;* Annotation, 31 A.L.R. 2d 8, 67.

In the *Sheffield* case, *supra,* the purchaser sued the seller to recover the deposit. He had notified the seller that he would not complete the contract, but the seller, who insisted on going through with the contract, tendered a deed therefor, and later notified the purchaser that it had sold the house to another, but would hold the original purchaser for damages. The purchaser demanded a return of the deposit. The contract contained a forfeiture clause identical in most respects with that we now have under consideration. The Court, questioning the dictum in *Barnette v. Sayers, supra*—to the effect that mere retention of a deposit "forfeited" it—allowed the purchaser to recover the deposit, and said at p. 252:

> "When * * * [the purchaser's] breach occurred two alternative remedies, apart from a suit for specific performance, were open to * * * [the seller] : (1) to 'forfeit' the deposit, i.e., to retain it as liquidated damages and call the deal off; [or] (2) to establish the actual damages by selling the house to third persons, and hold * * * [the purchaser] for the damages so established. * * * [The seller] chose the second course. * * * [The seller] cannot be permitted to make * * * [a] choice between liquidated and actual damages * * * for the intent of the option clause is not to give * * * [him] that advantage, but to make it unnecessary for * * * [him] to ascertain actual damages."

From what has been said thus far two things are clear: first, the purchaser in the instant case became entitled to a return of the deposit when the property in question was resold to another purchaser; and, secondly, the Real Estate Commission was right, but for the wrong reason, when it insisted that the deposit should be returned to the purchaser.

We now return to the principal question—the right of the broker to compensation. As to this question, since the seller in the exercise of his option refused to forfeit the deposit, it appears that the broker lacks the right to recover compensation from the seller for making the first sale. In *Kritt v. Athens Hills Development Co.,* 109 Cal. App. 642, 241 P. 2d 606 (1952), the contract between the broker and the seller provided that if any "deals" for the sale of lots in a subdivision were cancelled, "any moneys deposited on said deals and declared forfeited, shall be divided equally." The Court, in ruling that the broker could not recover part of a deposit which the seller *did not* forfeit, said at p. 609:

> "The * * * [broker's] contention that many deposits which were returned by the seller to the buyers should instead have been declared forfeited is without merit. In the first place the contract does not impose a duty upon the seller to declare a forfeiture where he could do so. * * * If the broker intended to require the seller to declare forfeitures where forfeitures could be declared, he failed to insert the necessary language in the broker's contract."

See also *Reville v. Poe,* 249 S. W. 2d 241 (Tex. Civ. App., 1952), [broker did not acquire right to one-half of deposit unless and until seller successfully secured judgment against purchaser for forfeiture of deposit]; *Berry v. Keith,* 100 A. 2d 831 (D. C. Mun. App., 1953), [broker has no right on behalf of seller to declare a forfeiture of deposit paid into broker's hands by a purchaser, and if he does, the law will not allow him to benefit from the violation of his fiduciary trust]. But compare *Huber v. Gershman,* 300 S. W. 2d 501 (Mo. 1957), [seller could not waive earnest money which "automatically" became forfeited upon default until the sum due broker under the contract had been paid].

Finally, there is a circumstance in this case which is certainly out of the ordinary in that the broker was the procuring cause of both sales. No point was made of this fact, and we expressly do not decide it, but since the broker was a party to the first contract of sale, it may be that he waived his right to a share

of the deposit on the first sale, as did the seller, when he participated in the sale of the property to the second purchaser. Cf. *Goss v. Hill, supra.*

From what has been said we are constrained to rule that the broker is not entitled to any compensation for making the first sale since the seller did not forfeit the deposit which only he had a right to do under the contract of sale and there was no provision therein requiring the seller to declare a forfeiture if and when a default should occur.

For the reasons assigned the judgment will be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*