## W. C. PINKARD & COMPANY, INC. *v.* CASTLEWOOD REALTY COMPANY, INC.

[No. 242, September Term, 1973.]

*Decided May 7, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Jeffrey D. Herschman,* with whom was *Joseph G. Finnerty, Jr.,* on the brief, for appellant.

*Robert J. Thieblot,* with whom were *Allen, Thieblot & Alexander* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

Once again we are called upon to determine the right of a real estate broker to a commission. There is no dispute as to the material facts of the case.

The appellee Castlewood Realty Company, Inc., controlled by majority shareholders Walter L. McManus, Sr. and Walter L. McManus, Jr., owned a tract of land situated partly in Baltimore City and partly in Baltimore County. On May 6, 1965, the McManuses, through another corporation controlled by them, entered into a lease agreement with Food Fair Stores, Inc. Under the lease agreement with Food Fair, the McManuses agreed to construct a shopping center on the tract and to lease a portion of it to Food Fair for a supermarket. Thereafter, the McManuses actively sought a purchaser for the land and entered into negotiations with Food Fair. As a result of these negotiations, Food Fair claimed that the parties had entered into a binding contract whereby Food Fair would purchase the tract of land. When it appeared that the McManuses did not share their view,

Food Fair sought specific performance of either the agreement to construct a shopping center or the alleged agreement to sell them the property.

While the Food Fair suit was in litigation, the McManuses leased the property, subject to several conditions, to another company, the Padonia Land Company, Inc. The lease between the McManuses and the Padonia Land Company resulted, to a large extent, from the efforts of appellant W. C. Pinkard & Company, Inc., a real estate broker. One of the stipulated conditions before the lease with the Padonia Land Company could become operative, was that the McManuses successfully defend the Food Fair suit.

Three months after the execution of the Padonia lease, the appellant W. C. Pinkard & Company and the appellee Castlewood Realty Company entered into a commission agreement, which provided in part:

> "In accordance with our discussions our commission in connection with this transaction only becomes due when the ground lease becomes operative. In that event you will pay to the W. C. Pinkard & Company TWENTY-FIVE THOUSAND ($25,000) DOLLARS in three equal annual installments."

On September 30, 1970, the Circuit Court of Baltimore City rendered an opinion upholding Food Fair's contention that it had contracted for the purchase of the tract of land, and the court ordered specific performance of the contract. On March 4, 1971, the McManuses and the Padonia Land Company entered into a termination agreement, the terms of which cancelled the lease agreement between them and discharged their respective liabilities under that agreement. The termination agreement resulted from the decision by the McManuses and the Padonia Land Company, after consultation with their attorneys, that the chances of a successful appeal of the Food Fair litigation were minimal.

Thereafter, the broker W. C. Pinkard & Company brought this action against Castlewood in the Superior Court of Baltimore City, claiming a right to a $25,000 commission

under the brokerage agreement, even though the ground lease with the Padonia Land Company did not become "operative." Based on an agreed statement of facts, the trial judge (Carter, J.) concluded that the plaintiff was not entitled to a commission, and judgment was awarded in favor of the defendant Castlewood.

Since the broker and Castlewood entered into a brokerage agreement containing provisions as to when the broker's right to a commission accrued, the provisions of Maryland Code (1957, 1973 Repl. Vol.), Art. 21, § 14-105, are inapplicable.[1] The terms of the contract, specifying when the broker was entitled to a commission, are controlling. *Snider Bros. v. Heft,* 271 Md. 409, 317 A. 2d 848 (1974); *Prince George's Club v. Carr,* 235 Md. 591, 603, 202 A. 2d 354 (1964); *Chasanow v. Willcox,* 220 Md. 171, 176, 151 A. 2d 748 (1959); *Goss v. Hill,* 219 Md. 304, 307-308, 149 A. 2d 10 (1959). The brokerage agreement here was explicit and unambiguous. Appellant was to be awarded its commission "only . . . when the ground lease becomes operative." By virtue of the termination agreement between the McManuses and the Padonia Land Company, described above, the ground lease never became "operative." The condition specified in the brokerage agreement failed to materialize. Consequently, under the terms of the brokerage agreement, appellant has no right to a commission. *Prince George's Club v. Carr, supra; Chasanow v. Willcox, supra.*

However, the appellant broker argues that the voluntary

---

1. That statute, formerly Code (1957), Art. 2, § 17, provides (emphasis supplied):

"Whenever, *in the absence of special agreement to the contrary,* a real estate broker employed to sell, buy, lease or otherwise negotiate real or leasehold estates or mortgages, or loans thereon, procures in good faith a purchaser. seller. lessor or lessee. mortgagor or mortgagee, borrower or lender, as the case may be, and the person so procured is accepted as such by the employer. and enters into a valid, binding and enforceable written contract of sale, purchase, lease, mortgage, loan or other contract, as the case may be, in terms acceptable to the employer, and such contract is accepted by the employer and signed by him, the broker shall be deemed to have earned the customary or agreed commission, as the case may be, whether or not the contract entered into be actually performed, unless the performance of such contract be prevented, hindered or delayed by any act of the broker."

act of the McManuses eliminated any possibility that the required condition would occur. It is contended that the McManuses owed a duty to the broker to appeal the Food Fair suit so as to save the condition from failing. Reliance is placed on the principle set forth in 3A Corbin, *Contracts* § 768, p. 548 (1960), that a principal cannot defeat his real estate broker's right to a commission by preventing the occurrence of a condition by "refusing to make the conveyance" or "by a voluntary rescission" of the transaction. Assuming, *arguendo*, that the McManuses could not defeat the broker's right to a commission by refusing to consummate or voluntarily rescinding the agreement with the Padonia Land Company, we think it clear that the McManuses' actions did not constitute a refusal to consummate or a voluntary rescission. The ground lease with the Padonia Land Company did not become operative because of the vigorously contested litigation with Food Fair. The decision not to appeal the result of such litigation, after advice of counsel that an appeal would probably not be successful, does not constitute a refusal to consummate or a voluntary rescission of the agreement with the Padonia Land Company.

*Judgment affirmed, appellant to pay costs.*