## BERMAN *v.* HALL ET AL.

[No. 212, September Term, 1974.]

*Decided July 7, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*James L. Baer,* with whom were *Clark & Cromwell, P.A.* and *Harry Bonnett* on the brief, for appellant.

*Michael Esher Yaggy,* with whom were *Francis B. Burch, Jr.,* and *Piper & Marbury* and *Stanley G. Robins* and *Robins, Robins & Johnson* on the brief, for appellees.

ELDRIDGE, J., delivered the opinion of the Court.

This is an action by a real estate broker for a commission from the sellers under a contract for the sale of real estate, although the contract was never consummated. The sellers' demurrer to the broker's amended declaration was sustained by the Circuit Court for Wicomico County (Pollitt, J.), and the broker appeals. The pertinent facts, as alleged in the broker's amended declaration, are as follows.

The sellers, Avery W. Hall and Nathaniel R. Wootten owned certain real property in Ocean City, Maryland. On January 26, 1972, they entered into a contract to sell the property for $1,800,000.00 to International-Industrial Developers, Ltd. The clauses of the contract relevant to the present controversy are:

"AGENCY: the Seller recognizes George Berman as the Agent negotiating this Contract and agrees to pay Five percent (5%) of the sale price commission for services rendered, *same to be due and payable upon the settlement of this Contract.* The entire deposit shall be held by . . . [the purchaser's attorney], until settlement hereunder is made and the party making settlement is hereby authorized and directed *to deduct the aforesaid commission from the proceeds of the sale* and pay same to said Agent. If the sale is not closed because of the Purchasers default the commission shall be one-half (1/2) the amount of the deposit.

"The Agent hereby agrees to the within commission provisions but assumes no responsibility for the condition of the property or for the performance of the Contract by any or all parties hereto." (Emphasis supplied.)

Settlement was scheduled for August 16, 1972.

At the time of settlement, the purchaser's attorney raised certain title objections; the sellers agreed to clear the title objections; and settlement was postponed. However, instead of settlement later taking place, the sellers and the

purchaser on November 11, 1972, executed a "mutual release," releasing "each other from any and all obligations arising out of the Contract" of January 26, 1972.

It does not appear from the facts set forth in the broker's declaration and amended declaration whether the sellers had, as of November 11, 1972, cleared the title objections or why they entered into the "mutual release." There were no allegations that the purchaser was at fault, and the purchaser's attorney did not turn over the deposit money to the sellers. During the oral argument before us the broker's attorney conceded that there was no default by the purchaser. The broker was not a party to the "mutual release."

The broker, asserting that his right to a commission from the sellers "irrevocably attached pursuant to the terms of the original Contract of Sale," and that the sellers, by entering into the "mutual release" agreement with the purchaser, violated their duty to the broker under the January 26, 1972, sale contract, brought this action for a $90,000 commission, based on 5% of the contract price.[1] The circuit court first sustained the sellers' demurrer to the declaration with leave to amend, and later sustained a demurrer to the amended declaration without leave to amend. The court held that under the allegations, the broker would only be entitled to a commission if the sale had been consummated or if the purchaser had defaulted, and that neither event occurred in this case. Reliance was placed upon this Court's decisions in *Snider Bros., Inc. v. Heft*, 271 Md. 409, 317 A. 2d 848 (1974); *Prince George's Club v. Carr*, 235 Md. 591, 202 A. 2d 354 (1964); and *Chasanow v. Willcox*, 220 Md. 171, 151 A. 2d 748 (1959). We agree with Judge Pollitt's decision for the circuit court, and therefore we affirm.

The broker, arguing that he became entitled to his full commission upon the execution of the sale contract, relies

---

1. At no time has the broker alleged the existence of a listing agreement with the sellers or any kind of employment agreement with them, written or verbal, other than the previously quoted provisions of the contract of sale.

upon Maryland Code (1974), § 14-105 of the Real Property Article, which provides:

> "*In the absence of special agreement to the contrary*, if a real estate broker employed to sell, buy, lease, or otherwise negotiate an estate, or a mortgage or loan secured by the property, procures in good faith a purchaser, vendor, lessor, lessee, mortgagor, mortgagee, borrower, or lender, as the case may be, and the person procured is accepted by the employer and enters into a valid, binding, and enforceable written contract, in terms acceptable to the employer, of a sale, purchase, lease, mortgage, loan, or other contract, as the case may be, and the contract is accepted by the employer and signed by him, the broker is deemed to have earned the customary or agreed commission. He has earned the commission regardless of whether or not the contract entered into is performed, unless the performance of the contract is prevented, hindered, or delayed by any act of the broker." (Emphasis supplied.) [2]

As this Court has pointed out on many occasions, the above-quoted statute "was passed to settle the question so often raised, as to when, in the absence of a special agreement, the broker was entitled to commissions." *Brown v. Hogan,* 138 Md. 257, 268-269, 113 A. 756 (1921). And *see Eastern Associates v. Sarubin,* 274 Md. 378, 395, 336 A. 2d 765, 774 (1975); *Wyand v. Patterson Agency,* 271 Md. 617, 623, 319 A. 2d 308 (1974); *Snider Bros., Inc. v. Heft, supra,* 271 Md. at 416; *Ricker v. Abrams,* 263 Md. 509, 517, 283 A. 2d 583 (1971); *Sanders v. Devereux,* 231 Md. 224, 231, 189 A. 2d 604 (1963); *Schapiro v. Chapin,* 159 Md. 418, 424-425, 151 A. 44 (1930). However, as the language of the statute makes clear, where the parties enter into an agreement specifying a different time when the right to a brokerage commission accrues, the agreement and not the statute is controlling.

---

**2.** Formerly codified in Maryland Code (1957, 1973 Repl. Vol.), Art. 21, § 14-105, and prior to that in Code (1957), Art. 2, § 17.

"The issue then becomes the parties' intent under that agreement." *Snider Bros., Inc. v. Heft, supra,* 271 Md. at 416. *See also Chas. H. Steffey, Inc. v. Derr,* 275 Md. 121, 338 A. 2d 262 (1975); *Cohen v. Duclos,* 272 Md. 41, 45-46, 321 A. 2d 145 (1974); *Wyand v. Patterson Agency, supra,* 271 Md. at 623-624; *W. C. Pinkard & Co. v. Castlewood,* 271 Md. 598, 601, 319 A. 2d 123 (1974); *Prince George's Club v. Carr, supra,* 235 Md. at 603; *Chasanow v. Willcox, supra,* 220 Md. at 176; *Goss v. Hill,* 219 Md. 304, 307-308, 149 A. 2d 10, 69 A.L.R.2d 1239 (1959).

In the subject case, the broker argues that the language of the January 26, 1972, contract concerning the broker's entitlement to a commission did not create a "special agreement to the contrary" within the meaning of § 14-105 of the Real Property Article, and that under § 14-105 the broker was entitled to a commission upon the signing of the sale contract. The language of the January 26 contract specifies that the commission is "to be due and payable upon the settlement of this contract" and that "the party making settlement is hereby authorized and directed to deduct the aforesaid commission from the proceeds of the sale." The contract provision goes on to state that in the event of the purchaser's default, the commission shall be one-half the amount of the deposit. The broker contends that the references to the commission being due and payable at the time of settlement, and to be deducted from the sale proceeds, merely reflected an intention that, "as an accommodation to the sellers . . . , [the broker] agreed to postpone the physical payment of that commission until settlement," but that the clear intention of the parties was that the right to a commission had vested at the time the contract of sale was signed.

The broker's argument ignores the plain meaning of the contract language. The words "due and payable at the time of settlement" denote something more than a postponement of the time for payment as an accommodation. If the commission is not *due* until settlement, and not *payable* until then, the right to it clearly does not accrue until

settlement. The additional language specifying that the commission is to be deducted from the proceeds of the sale confirms this. If there is no settlement, there can be no sale proceeds. The designated fund, which is to be the source of the commission, will not exist.

Moreover, the cases in this Court construing almost identical contract language, require rejection of the broker's argument concerning the applicability of § 14-105. In *Chasanow v. Willcox, supra*, 220 Md. at 176, the Court stated:

> "But the statute [§ 14-105] is applicable only 'in the absence of a special agreement to the contrary,' and, in this case, there were two special agreements, one of which was a substitute for the other. There was an agreement that the seller would pay the broker a commission *to be deducted from the proceeds of sale*. However, in the event the purchaser should default it was understood that the seller would allow the broker *one-half of the deposit* as compensation for his services to the seller. Since these are substitutional provisions, affecting the time of payment, source and amount of the compensation to which the broker would be entitled, the statute has no bearing on a decision of this case."

*Prince George's Club v. Carr, supra*, 235 Md. at 603-605, involved language which was almost the same as that here. The agreement in *Carr* provided that the broker's commission was to be "paid 'at the time of settlement of this contract . . . from the sale proceeds . . . .' " (*Id.* at 604-605.) The Court held that the statute was not applicable because the contract language amounted to a special agreement to the contrary, and that the language of the contract "made the consummation of the sale a condition precedent to the earning of the broker's commissions." (*Id.* at 603-604.) The Court went on:

> "In the present case we think a condition precedent was intended. The Club and the broker

agreed in terms that the provision as to commissions was to constitute a condition. The condition was not only that the commission was to be paid at the time of settlement but that it was to be paid from the $700,000 part of the purchase price [that was to be paid at settlement], and the necessary inference, we find, is that if there was no such purchase price there was to be no commission." (*Id.* at 605.)

In a case involving a real estate broker's commission decided just recently, *Mike Casey v. Nathan Jones,* 275 Md. 203, 205, 339 A. 2d 33 (1975), the Court, in an opinion by Judge Digges, construed very similar language as follows:

"The reason why the broker cannot succeed in this case can be found in the sales contract. By the terms of that agreement, the entire $5,000 earnest money deposit was to 'be held by [the] broker until settlement [under the contract] is made [, at which time] ... the party making settlement is ... directed to deduct the [6%] commission from the proceeds of the sale and pay same to said Agent.' Since, as the broker recognizes, the purchaser refused to consummate the transaction, the appellant's entitlement to a full commission, under this contract provision, did not accrue."

*See also Nily Realty v. Wood,* 272 Md. 589, 595, 325 A. 2d 730 (1974), and *W. C. Pinkard & Co. v. Castlewood, supra,* 271 Md. at 601, holding that language specifying that the broker's commission was to be "due and payable upon the" happening of an event (*Nily*) or "due when" an event occurred (*W. C. Pinkard*), meant that the right to the commission did not accrue until the specified event took place.

Since, under the factual allegations of the broker's amended declaration in the present case, the broker was not entitled to a commission unless settlement occurred or unless the purchaser defaulted causing a forfeiture of the

deposit, and since neither of these contingencies happened, the circuit court correctly sustained the demurrer.

*Judgment affirmed.*
*Appellant to pay costs.*