DeFRANCEAUX REALTY GROUP, INC. ET AL. *v.*
ELIZABETH THOMAS LEETH ET AL.

[No. 213, September Term, 1977.]

*Decided December 8, 1977.*

The cause was argued before THOMPSON, MELVIN and
WILNER, JJ.

*Warren Browning* for appellants.

*Darrel L. Longest,* with whom were *Mann, Larsen &
Longest* on the brief, for appellee Elizabeth Thomas Leeth.
Submitted on brief by *Michael Esher Yaggy* and *Piper &
Marbury* for other appellee.

MELVIN, J., delivered the opinion of the Court.

This is an action by real estate brokers (plain-
tiffs-appellants) for a commission from the sellers (de-
fendants-appellees) under a contract for the sale of real

estate. At the close of the plaintiffs' case at a jury trial in the Circuit Court for Frederick County, the trial judge (Mathias, J.) granted the defendants' motion for a directed verdict. From the judgment entered thereon, the brokers appeal. We shall affirm the judgment in favor of the sellers.

By written contract dated July 23, 1971, the sellers agreed to sell approximately 115 acres of land in Frederick County to Urban Systems Development Corporation (buyer) for a price of $5,500 per acre. Under the contract the buyer was given the right to terminate the agreement within specified periods of time if commitments for public water and sewer could not be obtained or if "engineering, economic and/or topographic studies . . . do not warrant the development of the property, in the sole discretion of the Purchaser", or if the purchaser could not obtain appropriate zoning for the property to permit "a planned unit development" thereon. The contract provided that settlement was to take place within thirty (30) days "after the final and unappealable rezoning approval has been granted".

The contract provision for commissions is as follows:

> "THE SELLERS agree to pay a commission amounting to ten per centum (10%) of the gross sales price on their respective share thereof, and the attorneys, through whom settlement is made, are hereby authorized and directed to make deduction of the aforesaid commission from the proceeds of the sale, and to make the payment thereof to Paul B. Ganley, Inc., Agent and Broker, and Frederick W. Berens Sales, Inc., [1] (E. Brooke Lee, Jr., representative)."

The contract further provided that:

> "IT IS further understood and agreed that all deposits under this contract shall be held until settlement or forfeiture in the name of Paul B.

---

1. On June 6, 1973, Frederick W. Berens Sales, Inc. changed its name to DeFranceaux Realty Group, Inc., which, with Paul B. Ganley, Inc., are the appellants herein.

Ganley, Inc., Agent and Broker, Route 6, Frederick, Maryland. In the event of the default on the part of the Purchaser under this contract, such deposits shall be forfeited as provided and be paid one-half to the Sellers and one-half to Paul B. Ganley, Inc., Agent and Broker, and Frederick W. Berens Sales, Inc. (E. Brooke Lee, Jr., representative)."

By the contract (which was signed by the brokers as well as the sellers) one of the brokers acknowledged receipt from the buyer of the only deposit ($10.00) mentioned in the contract, "to be applied as part payment toward the purchase price at settlement".

The brokers concede that under the contract provisions and the applicable Maryland case law construing similar provisions their right to a commission was conditioned upon a consummation of the sale and the creation of the fund, the "proceeds of the sale", from which to pay it. *See Berman v. Hall,* 275 Md. 434, 439, 340 A. 2d 251 (1975); *Cohen v. Duclos,* 272 Md. 41, 45, 321 A. 2d 145 (1974); *W. C. Pinkard & Co. v. Castlewood Realty Co.,* 271 Md. 598, 601, 319 A. 2d 123 (1974); *Snider Brothers, Inc. v. Heft,* 271 Md. 409, 416, 317 A. 2d 848 (1974); *Prince George's Country Club v. Carr,* 235 Md. 591, 603, 202 A. 2d 354 (1964); *Chasanow v. Wilcox,* 220 Md. 171, 176, 151 A. 2d 748 (1959); *Goss v. Hill,* 219 Md. 304, 307-308, 149 A. 2d 10 (1959).

It is undisputed that the sale in this case was never consummated and the fund for the payment of a commission was never created. The brokers, nevertheless, vigorously assert their right to a commission of approximately $62,000.00.[2]

The evidence presented by the brokers, viewed in the light most favorable to them, showed that the buyer wrongfully refused to consummate the sale; that thereupon on May 25, 1973, the sellers and the brokers filed suit for specific performance against the buyer alleging their own readiness, willingness and ability to proceed to settlement pursuant to

---

2. The evidence showed the property to consist of 112.407 acres.

the contract provisions and the buyer's unwarranted refusal to do so; that the same counsel represented the sellers and the brokers in that suit; that the specific performance case was eventually settled before trial in January 1974; that by the terms of the settlement the buyer delivered to the sellers certain development plans and documents relating to the property in exchange for a dismissal of the suit; and that the brokers had no actual knowledge of the dismissal of the suit and did not participate in advising the trial court that the case had been settled.

On May 8, 1974, the brokers filed the instant suit for commissions against their erstwhile co-plaintiffs in the specific performance case. They argue that although their right to a commission was conditioned upon settlement under the contract of sale, the action of the sellers in settling the specific performance case was a "voluntary rescission of the agreement with the purchaser" and had the effect of eliminating the condition precedent to their right to a commission. They rely upon the principle set forth in 3 A Corbin, *Contracts*, § 768, p. 548 (1960):

> "Often there are other conditions of the owner's duty to pay a commission to the broker. The owner may promise to pay a commission 'on closing of the deal,' or 'out of the price when received from the purchaser,' or 'after actual conveyance of the land.' The broker's right to payment is thus made subject to an additional express condition. *If the owner, after the broker procures an able and willing purchaser and there is mutual assent on terms, prevents the happening of the condition* by refusing to make the conveyance or *by a voluntary rescission of the agreement with the purchaser, the condition is eliminated and the broker can get judgment for the agreed commission.* There is no prevention by the owner, if it is the purchaser who repudiates his bargain and the owner merely forbears to bring an action for enforcement." (Emphasis added.)

Assuming, *arguendo*, that a voluntary rescission by a seller of his contract with a buyer would eliminate an orig-

inal condition precedent (*i.e.* settlement) to the payment of commissions,[3] we hold that in this case the sellers' actions did not amount to "voluntary rescission" as that term is used by Professor Corbin in the above quoted section of his work. Here, according to the evidence presented by the brokers, it was the buyer that repudiated its bargain. In such a case, "[t]here is no prevention by the owner . . . if . . . the owner merely forbears to bring an action for enforcement". *Id.* Thus, the sellers in this case could not have been charged with preventing the happening of the consummated sale (the condition precedent to the brokers' right to a commission) if they had taken no action at all to enforce the contract. Absent fraud or bad faith, should they be in a worse position because they did bring an action for enforcement and then settle the case for something less than substantial performance? We think not. As there was no evidence of fraud or bad faith on the part of the sellers, we think Judge Mathias was correct in directing a verdict in their favor.

> *Judgment affirmed.*
> *Costs to be paid by appellants.*

---

**3.** But see Berman v. Hall, *supra,* where the Court of Appeals held that the trial court correctly sustained, without leave to amend, a demurrer to the broker's declaration where the agreement conditioned payment of commissions upon settlement and settlement did not occur. There the buyer and seller had executed a "mutual release". There had been no default by the purchaser and it did not appear from the facts set forth in the declaration why the "mutual release" was entered into. If a "mutual release" does not eliminate the condition precedent (settlement) to a broker's commission, we think there is force to the argument that a "voluntary rescission" by the seller does not have that effect either, and if it does not, the "Corbin principle" concerning "voluntary rescission" espoused by the appellants would seem to have no validity in Maryland. However, the Court in Berman v. Hall did not discuss the Corbin principle and for the purposes of the case *sub judice* we shall assume, without deciding, that it is applicable in Maryland.