DeFRANCEAUX REALTY GROUP, INC. ET AL. *v.*
ELIZABETH THOMAS LEETH ET AL.

[No. 170, September Term, 1977.]

*Decided October 11, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ■LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Warren Browning* for appellants.

*Michael Esher Yaggy,* with whom were *Piper & Marbury* on the brief, for appellee Fredericktown Bank & Trust Company, personal representative of Howard O. Aldridge. *Darrel L. Longest,* with whom were *Mann, Larsen & Longest* on the brief, for appellee Elizabeth Thomas Leeth.

COLE, J., delivered the opinion of the Court.

Once again this Court is called on to settle a dispute involving the rights of real estate brokers to receive commissions. This case is an appeal from a judgment entered granting directed verdicts in favor of the defendant sellers.

Elizabeth Thomas Leeth and Howard Aldridge (sellers) employed two real estate brokers, Paul B. Ganley, Inc. and Frederick W. Berens Sales, Inc., now known as DeFranceaux Realty Group, Inc., (brokers) to sell farm land in Frederick County. The brokers procured a buyer, Urban Systems Development Corporation (purchaser), which was acceptable to the sellers. On July 23, 1971 a contract of sale was executed by the sellers and purchaser and also signed by the brokers which recited a ten dollar deposit to the brokers to be credited on the purchase price of $5,500 per acre applied to 112.407 acres of land, for a total of $618,235.50. The purchaser agreed to pay 20% of the purchase price, of which the recited deposit was part, in cash at the date of conveyance. The balance of the purchase price was payable by two promissory notes executed by the purchaser with the payment of such notes guaranteed by the purchaser's parent organization, Westinghouse Electric Corporation. Other contract provisions gave the purchaser various options to terminate the agreement; however, if the options were not exercised, the purchaser was to fully settle within 30 days after final rezoning approval.

Final and unappealable rezoning approval was granted on January 4, 1972. The purchaser never exercised any option to terminate the agreement, and all conditions were met for settlement of the land purchase. However, the purchaser

never settled and the sellers brought suit for specific performance of the contract in the Circuit Court for Frederick County against the purchaser and Westinghouse Electric Corporation. The brokers were joined as plaintiffs and the suit was ultimately removed to the United States District Court for the District of Maryland. The original parties decided to settle the suit and the sellers dismissed the action for specific performance in exchange for the purchaser's giving them various engineering and architectural studies done in preparation for settlement. The brokers were not advised of this agreement, and an order was entered dismissing the suit on January 24, 1974.

The brokers then brought an action in the Circuit Court for Frederick County against the sellers [1] for commissions from the sale of real estate. On January 21, 1977, Judge Mathias granted a directed verdict for the sellers. The Court of Special Appeals affirmed the judgment on January 11, 1978, *DeFranceaux Realty Group, Inc. v. Leeth,* 38 Md. App. 187, 379 A. 2d 1243 (1977). We then issued a writ of certiorari.

The real issue presented by this case is whether the brokers are entitled to a commission of 10% of the purchase price when the purchaser would not finalize the sale and when the sellers settled the ensuing dispute with the purchaser out of court.

The provision in the contract regarding the brokers' commission states:

> THE SELLERS agree to pay a commission amounting to ten per centum (10%) of the gross sales price on their respective share thereof, and the attorneys, through whom settlement is made, are hereby authorized and directed to make deduction of the aforesaid commission from the proceeds of the sale, and to make the payment thereof to Paul B. Ganley, Inc., Agent and Broker, and Frederick W. Berens Sales, Inc., (E. Brooke Lee, Jr., Representative).

---

1. Howard Aldridge died sometime prior to the initiation of this suit, and his interests are represented by the Fredericktown Bank and Trust Company of Frederick, Maryland participating as personal representative of his estate.

The law of this State provides that when there is no special agreement between the seller of property and the broker, the broker is entitled to his commission upon the signing of the contract between purchaser and seller, Maryland Code (1974), § 14-105 of the Real Property Article. However, when there is a special agreement, the terms of that agreement prevail. In this case, there was a special agreement that "authorized and directed" payment of the brokers' commission from the proceeds of the sale. Several recent cases in this Court have held that this kind of provision creates a condition precedent to the receipt of a commission, *i.e.,* a consummated sale is required before the broker can be paid. The contracts at issue in *Casey v. Jones,* 275 Md. 203, 205, 339 A. 2d 33 (1975), and *Chasanow v. Willcox,* 220 Md. 171, 174, 151 A. 2d 748 (1959), both provided for payment of the commission "from the proceeds of the sale." In each case we found that a special agreement thus governed the interests of the parties, and in the absence of a final sale, the brokers had no right to a commission.

In the instant case, the brokers do not actually argue that no special agreement was reached, and apparently concede that payment would not be due under this contract until the sale was finalized. They contend, however, that "the condition of the happening of settlement is dispensed with" because settlement of the suit for specific performance out of court constituted a "voluntary rescission" of the agreement by the sellers. Since the sellers committed an act which wrongfully interfered with their right to recover the commission, the brokers claim that they are entitled to their commission. They base their contention on a statement found in 3A A. Corbin, *Contracts,* § 768, at 548-49 (1960):

> Often there are other conditions of the owner's duty to pay a commission to the broker. The owner may promise to pay a commission 'on closing of the deal,' or 'out of the price when received from the purchaser,' or 'after actual conveyance of the land.' The broker's right to payment is thus made subject to an additional express condition. If the owner, after the broker procures an able and willing purchaser

and there is mutual assent on terms, prevents the happening of the condition by refusing to make the conveyance or by a voluntary rescission of the agreement with the purchaser, the condition is eliminated and the broker can get judgment for the agreed commission. There is no prevention by the owner, if it is the purchaser who repudiates his bargain and the owner merely forbears to bring an action for enforcement.

The brokers argue that this case is unlike any other this Court has had to deal with regarding brokers' commissions, because, first, all conditions to settlement had been met and, second, the sellers received consideration for dismissing the suit. However, our previous holdings in numerous cases and particularly as explicated in *Berman v. Hall,* 275 Md. 434, 340 A. 2d 251 (1975) stand as a bar to the broker's right of recovery in the instant case.

This Court has consistently looked to the terms of the contract between the parties in determining the right of the broker to receive commissions. In *W. C. Pinkard & Co. v. Castlewood,* 271 Md. 598, 319 A. 2d 123 (1974), while the owner of property was being sued by the "purchaser" for specific performance of the "contract" of sale made in their negotiations, the owner agreed to lease the property to a third party. The lease was negotiated by W. C. Pinkard and Company and the commission agreement provided that "our commission ... only becomes due when the ground lease becomes operative." *Id.* at 600. When the owner lost the specific performance suit, it entered into a termination agreement with the lessee because the chances of a successful appeal were minimal. The broker sued the owner for its commission. This Court stated:

The terms of the contract, specifying when the broker was entitled to a commission, are controlling. . . . The brokerage agreement here was explicit and unambiguous. Appellant was to be awarded its commission 'only ... when the ground lease becomes operative.' By virtue of the

termination agreement . . . [t]he condition specified in the brokerage agreement failed to materialize. Consequently, under the terms of the brokerage agreement, appellant has no right to a commission. [*Id.* at 601].

Similarly, in *Casey v. Jones, supra,* the purchaser's check for the deposit on the sale of realty was dishonored. The broker sought to secure his commission by suing the purchaser because he concluded that his commission would have to be obtained from the deposit money. This Court ruled that the broker's claim must fail. Judge Digges, speaking for the Court, said:

> The reason why the broker cannot succeed in this case can be found in the sales contract. By the terms of that agreement, the . . . deposit was to 'be held by [the] broker until settlement . . . is made [, at which time] . . . the party making settlement is . . . directed to deduct the . . . commission from the proceeds of the sale and pay same to said Agent.' Since, as the broker recognizes, the purchaser refused to consummate the transaction, the appellant's entitlement to a full commission, under this contract provision, did not accrue. [275 Md. at 205].

We went on to hold that the broker could not even collect one-half of the deposit money forfeited because, under another contract provision, the sellers did not formally declare a forfeiture, which was a condition precedent to the broker's recovery due to the dishonor of the purchaser's check. *Id.* at 206.

We have treated the terms of the contract as controlling in other situations, *see, e.g., Prince Georges Prop. v. Rogers,* 275 Md. 582, 341 A. 2d 804 (1975), *Prince George's Club v. Carr,* 235 Md. 591, 202 A. 2d 354 (1964), yet our rationale in *Berman v. Hall, supra,* is particularly persuasive with respect to the case at bar. In *Berman,* the contract of sale included a term which provided that the broker's commission would be "due and payable upon the settlement of this Contract . . ." and directed the party making settle-

ment "to deduct the aforesaid commission from the proceeds of the sale and pay same to said Agent." *Id.* at 435. At the time of settlement, the purchaser's attorney raised certain title objections and settlement was postponed while the sellers cleared the title. However, the settlement did not take place because the sellers and the purchaser executed a "mutual release" releasing "each other from any and all obligations arising out of the Contract." *Id.* at 435-36. The broker then sued to recover his commission, claiming that he became entitled to his full commission upon the execution of the contract of sale. This Court held that the specific agreement between the buyer and seller regarding the payment of the broker's commission was controlling. Judge Eldridge, writing for the Court, stated:

> The broker's argument ignores the plain meaning of the contract language. . . . If the commission is not *due* until settlement, and not *payable* until then, the right to it clearly does not accrue until settlement.

> \* \* \*

> Since, under the factual allegations of the broker's amended declaration . . . , the broker was not entitled to a commission unless settlement occurred or unless the purchaser defaulted . . . , and since neither of these contingencies happened, the circuit court correctly sustained the demurrer. [*Id.* at 438-39, 440-41].

Our rationale in *Berman* suffices to decide the present case. The contract in this case, *supra,* contained a nearly identical provision agreeing to pay the brokers their commission by deducting it "from the proceeds of the sale." We have consistently held that when the term "sale" is used in a contract of this type, it refers to a completed settlement. *See Wyand v. Patterson Agency,* 271 Md. 617, 319 A. 2d 308 (1974); *Riggs v. Turnbull,* 105 Md. 135, 66 A. 13 (1907); *Melvin v. Aldridge,* 81 Md. 650, 658, 32 A. 389 (1895); *Kimberly v.*

*Henderson,* 29 Md. 512 (1868). *See also Beale v. Creswell,* 3 Md. 196, 201 (1852); *Keener.v. Harrod,* 2 Md. 63, 71 (1852). The contract in this case stipulated that the real estate brokers' commission would be deducted from the proceeds of sale, the equivalent of the Berman provision, and thus would not be payable until settlement took place. Since the condition precedent, settlement, never occurred, the brokers here have no contractual right to a commission. The factual distinctions set forth by the brokers in their brief, such as the consideration given for the out of court settlement, go to their argument of "voluntary rescission," but have no bearing on our interpretation of the terms of the contract. The brokers have cited no relevant differences between the contract terms in *Berman* and the contract in this case. We abide by the rationale in *Berman.*

Brokers are treated very favorably under Code (1974), § 14-105 of the Real Property Article and are entitled to a commission, when, absent a special agreement, a contract of sale is signed. When brokers such as the appellant voluntarily take themselves outside the statute by signing a contract which has been construed to provide for payment of commissions from the proceeds of sale at settlement, they must abide by the terms of that arms' length agreement. *Prince Georges Prop. v. Rogers, supra; Berman v. Hall, supra; Casey v. Jones, supra; W. C. Pinkard & Co. v. Castlewood, supra; Snider Bros., Inc. v. Heft,* 271 Md. 409, 317 A. 2d 848 (1974); *Prince George's Club v. Carr, supra; Goss v. Hill,* 219 Md. 304, 149 A. 2d 10 (1959); *Chasanow v. Willcox, supra; Borowski v. Meyers,* 195 Md. 226, 72 A. 2d 701 (1949); *Schapiro v. Chapin,* 159 Md. 418, 151 A. 44 (1930). Here the brokers have made no showing in the record that fraud or duress surrounded the signing of the contract of sale, nor have they shown that the sellers and purchaser later worked in collusion to settle their differences out of court in order to deprive the brokers of their commission. Absent such a showing, we will not rewrite a contract now to suit parties which had ample opportunity to bargain for contract terms which would have been more favorable to their interests.

For the reasons stated above, the judgment of the Court of Special Appeals is affirmed.

*Judgment affirmed; costs to be paid by appellants.*